## CHAVELLE v. WASHINGTON TRUST CO.

## WASHINGTON TRUST CO. v. WASHINGTON STEEL & BOLT CO.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1915. Amendment of Judgment, November 1, 1915.)

### No. 2512.

1. BANKRUPTCY ⬥⟳440—REVIEW—MODE OF REVIEW.

Where the bankruptcy court rendered a final judgment adjudging that certain bonds secured by a deed of trust executed by the bankrupt were invalid, and ordering that the mortgaged property be sold free and clear from the lien thereof and that the proceeds be distributed accordingly, the trustee under the deed of trust was justified in resorting to both appeal and petition for review in order to avoid a mistake in its remedy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 1775–1777; Dec. Dig. ⬥⟳440.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CORPORATIONS ⬥⟳298—MEETINGS OF DIRECTORS—VALIDITY OF ACTS.

The minutes of the board of directors of a corporation having seven trustees purported to show the adoption at a meeting of the directors of a a resolution to deliver bonds secured by a deed of trust, the issuance of which had previously been authorized, to a creditor as collateral security. In fact, however, no meeting was held, and the resolution was merely sent to the secretary, who signed it and called two of the other trustees to the office, one of whom signed it in the presence of the other and the other of whom signed it without any other trustee being present. The resolution was then sent to two of the other trustees, who signed it without any other member of the board being present. Held, that the purported resolution was invalid, and the bonds were issued without authority and were void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1292–1317, 1319; Dec. Dig. ⬥⟳298.]

3. CORPORATIONS ⬥⟳469—BONDS—VALIDITY OF ISSUANCE.

A corporate trust deed securing an issue of bonds provided that the bonds should not be sold or disposed of directly or indirectly at a greater discount than 5 per cent. from their face value. The corporation was indebted to a bank on a note for $20,000 secured by other bonds deposited by certain of the officers. The bank demanded additional security, and the directors authorized the placing with the bank as collateral for the indebtedness of unsold bonds to the amount of $25,000. Held, that the issuance of such bonds was contrary to the provisions of the trust deed. and contrary to Const. Wash. art. 12, § 6, prohibiting any corporation from issuing any bond or other obligation for the payment of money except for money or property received or labor done.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⬥⟳469.]

4. CORPORATIONS ⬥⟳472—BONDS—RIGHTS OF BONA FIDE HOLDERS.

A corporate trust deed securing an issue of bonds recited the insufficiency of the corporation's plant, the advisability and necessity of borrowing money, the corporation's legal authority to do so, and a resolution of the board of directors authorizing such bonds. The bonds, the form of which was prescribed in the trust deed, acknowledged an indebtedness to the bearer or, if registered, to the registered holder, and provided that they might pass by delivery, but might be registered upon the transfer book of the trustee and thereafter should be transferred only on the books unless the transfer was to bearer when they should again be transferred by de-

livery. They further provided that all payments of principal and interest should be made without deduction for any tax that the corporation might be required to pay or to retain therefrom by any law of the United States or of the state; the corporation thereby covenanting to pay such taxes. The trust deed further provided that the bonds should not be sold at a greater discount than 5 per cent. from their face value. The corporation was indebted to its president and secretary, and the directors voted that a commission of 5 per cent. be allowed to any agent, officer, or trustee purchasing or selling any of such bonds, and that the accounts of the president and secretary be settled by giving them bonds allowing them a discount of 5 per cent. and a commission of 5 per cent. for selling them. Bonds were issued on this basis to the president and secretary, and a resolution was subsequently adopted authorizing the sale of an additional amount of the bonds to the president at 90 cents on the dollar on credit, but it appeared that he had made further advances to the company for which bonds were issued to him. The president and secretary transferred the bonds in good faith and for value, there being no fraud on their part or on the part of the transferees. *Held*, that the provision as to payment without deduction of any tax did not render the amount or time of payment uncertain, and the bonds were negotiable instruments, and hence were valid in the hands of the transferees whether valid in the hands of the original holders or not.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1837, 1839, 1841; Dec. Dig. ☜172.]

Appeals from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

In the matter of the Washington Steel & Bolt Company, bankrupt. To review the final judgment, Edward H. Chavelle, trustee in bankruptcy, appeals, and the Washington Trust Company appeals and petitions for review. Remanded, with directions.

See, also, 210 Fed. 984.

The Washington Steel & Bolt Company, a corporation of the state of Washington, had in active operation a factory for manufacturing bolts of various kinds, located at Edmonds, Snohomish county, Wash. For the purpose of adding to its plant and increasing its capacity, among other purposes, it, on the 1st day of September, 1908, executed to the Washington Trust Company, a corporation of the same state, as trustee, a trust deed or mortgage covering its real and personal property, to secure an issue of $200,000 of bonds, which deed recited, among other things, the objects and purposes of the corporation, the insufficiency of its plant to supply the demands for its manufactured products, the advisability and necessity of borrowing money for its needs, its legal authority to do so, and the resolution adopted by its board of directors authorizing the making and issuing of "its first mortgage coupon bonds of the total issue of two hundred thousand ($200,000) dollars divided into five hundred (500) bonds of one hundred ($100) dollars each, two hundred (200) bonds of five hundred ($500) dollars each, and fifty (50) bonds of one thousand ($1,000) dollars each, all payable at the office of the trustee in Spokane, Washington, on the 1st day of September, 1918, in gold coin of the United States of the present standard of weight and fineness, bearing interest at the rate of eight (8%) per centum per annum from the date of issue or sale thereof, payable semi-annually in like gold coin on the first day of March and September, in each and every year thereafter, until said principal is fully paid, according to the tenor of the coupons thereto annexed, without deduction for any tax or taxes that the Washington Steel & Bolt Company may be required to pay or to retain from said principal or interest, by any present or future laws of the United States of America, or of the state of Washington; said bonds being

numbered consecutively from one (1) to and including the number seven hun‧ dred and fifty (750)."

The mortgage prescribed the form of the bonds by which the mortgagor, among other things, "acknowledges itself indebted to the bearer of this bond, or if this bond be registered to the registered holder thereof in the sum of one thousand ($1,000) dollars (or five hundred [$500] dollars or one hundred [$100] dollars as the case may be), which it hereby promises and agrees to pay in United States gold coin of the present standard of weight and fineness, on the first day of September, 1918, at the office of the Washington Trust Company, trustee, in the city of Spokane, county of Spokane, state of Washington, with interest thereon from the date of issue or sale thereof until paid at the rate of eight (8%) per centum per annum payable semiannually in like gold coin on the first day of March and September in each year on the presentation and surrender of the coupons annexed hereto, as they severally become due; all payments upon this bond, both of the principal and interest shall be made without deduction for any tax or taxes that said Washington Steel & Bolt Company may be required to pay or to retain therefrom by any present or future laws of the United States of America, or of the state of Washington, said Washington Steel & Bolt Company hereby covenanting and agreeing to pay any and all such tax or taxes," and each bond also recited, among other things, that the bond "is one of a series of seven hundred and fifty (750) bonds all of the same tenor and date, numbered consecutively from one (1) to and including the number seven hundred and fifty (750)," and that the bond "may pass by delivery but may be registered as to the number hereof, upon the transfer book of the trustee at its office, and after such registration duly certified hereon by the trustee this bond shall be transferred only on said books, unless transfer be to bearer, when it shall again be transferred by delivery subsequent to registration in like manner. This bond shall not become obligatory until it shall have become authenticated by the certificate of the trustee indorsed hereon."

One of the provisions of the trust deed or mortgage is as follows:

"It is also mutually understood and agreed that as a further condition running with this indenture that any bond or bonds issued under or secured by this indenture shall not be sold or disposed of directly or indirectly at a greater discount than five (5%) per cent. thereof, that is to say, said bond or bonds shall not be sold or disposed of for less than ninety-five (95) cents on the dollar, of the par or face value of said bonds."

The instrument was duly recorded in the county where the property covered by it is situated and in which the office of the company was located.

Prior to the execution of the trust deed, one A. McPhaden, who was the president of the Steel & Bolt Company and who owned a large majority of its stock, had advanced the company $21,128.80, and one A. G. Pike, who was its secretary and treasurer, had advanced it $2,693.85. Each of them was a director of the company. On the day that the trust deed was executed, the board of directors passed a resolution reciting a former resolution of the board adopted June 13, 1908, authorizing the execution of the trust deed and providing for the issuance and placing on the market of $75,000 in amount of the bonds authorized, immediately upon the execution of the trust deed, and providing for the issuance and placing on the market of the remaining $125,000 in amount of the bonds at such future time as the trustees should deem best for the interests of the company, and providing that "a commission of five per cent. of the face value of the bonds of said company be allowed to any agent, officer or trustee of the company purchasing or selling any of said bonds of said company," and providing that "the accounts of A. McPhaden and A. G. Pike for money loaned to the Washington Steel & Bolt Company to date be settled by giving them bonds of the Washington Steel & Bolt Company, allowing them a discount of five per cent. on said bonds, and a commission of five per cent. for selling the same and authorizing the trustee to issue to them bonds of said company in proportion to the amount of the claims due each, as shown by the books of the company."

On the day the trust deed or mortgage was executed, to wit, September 1, 1908, there was presented to the trust company by the secretary of the Steel & Bolt Company these certificates:

"To the Washington Trust Company: This is to certify, that according to the books of the Washington Steel & Bolt Company, A. McPhaden up to the first day of September, 1908, has a credit of $21,128.80, and that according to a resolution passed by the trustees of the said Washington Steel & Bolt Company on the first day of September, 1908, said A. McPhaden is to be paid in the bonds of said company, allowing the agent's commission of five per cent. and the discount of five per cent.; which said discount and commission would give him a credit of $23,241.68, and on payment to you of $58.32 in cash, you are authorized and instructed to issue to said A. McPhaden 20 bonds of denomination of $1,000 each, six bonds of $500 each, and 3 bonds of $100 each, making a total cash value of $23,300.

"Dated this first day of September, 1908.

"Washington Steel & Bolt Company,
"[Signed] By A. G. Pike, Secretary and Treasurer."

"To the Washington Trust Co.: This is to certify, that according to the books of the Washington Steel & Bolt Co., A. G. Pike, up to the first day of September, 1908, has a credit of $2,693.85, and that according to a resolution passed by the trustees of the said Washington Steel & Bolt Company, on the first day of September, 1908, said A. G. Pike is to be paid in the bonds of said company, allowing the agent's commission of five per cent. and the discount of five per cent.; which said discount and commission would give him a credit of $2,963.23, and you are authorized and instructed to issue to said A. G. Pike four (4) bonds of the denomination of $500.00 each, and nine (9) bonds of $100.00 each, making a total cash value of $2,900.00, and leaving him a credit balance of $63.23 on the books of said company.

"Dated this first day of September, 1908.

"Washington Steel & Bolt Co.,
"[Signed] By A. S. Pike, Secretary and Treasurer.
"[Signed] H. R. Beeson, Accountant."

In accordance with the above-mentioned resolution and certificates, bonds of the company were issued to McPhaden to the amount of $23,300, and to Pike to the amount of $2,900, in payment of the money theretofore, respectively, advanced by them to it.

McPhaden continued to advance money to the company, and from time to time additional bonds to the amount of $11,200 were issued to him therefor at 90 cents on the dollar, making $34,500 of bonds so issued to McPhaden. Subsequently the Steel & Bolt Company borrowed $20,000 from the Spokane branch of the Bank of Montreal; $10,000 on May 1, 1909, $5,000 May 11, 1909, $2,500 June 16, 1909, and $2,500 July 28, 1909. That money was borrowed upon notes made by McPhaden and Pike payable to the Steel & Bolt Company and indorsed by the latter; and as collateral security therefor McPhaden delivered to the bank $20,000 of the bonds issued to him, and Pike delivered to it the $2,900 of bonds that had been issued to him. Of McPhaden's remaining $14,200 of the bonds he sold for value $2,500 to one C. F. Chapin, $2,000 to one Meta McElroy, $2,600 to one Thomas Burley, and $7,000 to one J. H. Osborne.

The minutes of the board of directors of the Steel & Bolt Company of March 20, 1911, are as follows:

"Edmonds, Wash., March 20, 1911.

"Meeting of the Board of Directors, Washington Steel & Bolt Co.

"Pursuant to notice given March 16, 1911.

"Meeting called to order by vice president.

"The following directors were present: W. R. Adams, H. W. Hall, A. G. Pike.

"Minutes previous meeting read and approved.

"Motion made by A. G. Pike seconded by R. W. Hall that $25,000 of the company's unsold bonds be placed with the Bank of Montreal as collateral on a $20,000.00 loan that this company owes, and an order be given the Washington Trust Company to deliver same to the bank. Carried.

"Motion made by A. G. Pike to send a copy of these minutes to Dr. J. W.

Cosford and Austin Ready for their consideration (they not being present). Seconded by H. W. Hall. Carried. ·

"There being no further business meeting adjourned.

"[Signed]     A. G. Pike, Sec't & Treasurer.
"W. R. Ammon, Vice President.
"H. W. Hall.
"J. W. Cosford, President.
"Austin Ready."

Pursuant to that resolution, an additional $25,000 of the bonds were certified by the trustee and delivered to the Bank of Montreal as additional collateral security for the moneys loaned by it to the Steel & Bolt Company.

On the 29th of September, 1911, the Steel & Bolt Company was adjudged a bankrupt by the court below, and Edward H. Chavelle was duly appointed trustee of the bankrupt's estate. After the adjudication the Washington Trust Company petitioned the court below for leave to foreclose the trust deed in another court, which petition was answered by the trustee of the bankrupt's estate, in which answer he challenged the validity of the trust deed and of the bonds issued thereunder. Upon a hearing of that petition and answer, the referee in bankruptcy, without passing upon the validity of the trust deed or of the bonds issued thereunder, granted the prayer of the petitioner "upon the condition that it pay to the trustee for the benefit of said estate the sum of twelve hundred dollars ($1,200)" on or before December 26, 1912, and further ordered that, "in the event that said sum is not paid, then and in that event the petition of the Washington Trust Company to foreclose its mortgage outside the bankruptcy proceeding is hereby denied."

Upon review the court below reversed that order of the referee and referred the matter back to him with directions to decide the question as to the validity of the trust deed and the bonds issued thereunder, upon the pleadings as they then existed or might be thereafter amended, which proceeding resulted in an order of the referee denying the petition of the trust company, upon the ground "that said purported mortgage and the outstanding bonds purporting to be issued thereunder are and each of them is null, void, and of no effect."

That action of the referee was taken by petition for review before the court below, resulting in this judgment of the court:

"That the order of the referee herein sought to be reviewed be and the same hereby is reversed, and that the said mortgage be and the same hereby is adjudged and decreed a valid and existing lien according to its tenor upon all the property described therein, and also upon all property acquired by said bankrupt subsequent to the execution of said mortgage, excepting, however, the stock of raw material obtained for manufacturing purposes and the manufactured product now possessed by the said bankrupt and its trustee, and as to said stock of raw material acquired for manufacturing purposes and the manufactured product the said mortgage is hereby adjudged and decreed to be invalid; and this matter is remanded to the referee to take proof and ascertain the status of each of the bonds issued under said mortgage and the amount due and owing upon each of said bonds and allow such items as justified by evidence and report his findings thereon to this court."

The matter again coming on for hearing before the referee resulted in various findings of fact and in these conclusions of law drawn therefrom by the referee:

"I. That the issuance of said bonds to said McPhaden and Pike was ultra vires and void, and the issuance of each of said bonds was ultra vires and void.

"II. That none of said bonds were enforceable against the bankrupt in the hands of said McPhaden and Pike.

"III. That the issuance of said $25,000 of bonds to the Bank of Montreal was ultra vires and void, and that said bonds are unenforceable against said bankrupt.

"IV. That each and every of the bonds issued by Washington Steel & Bolt Company, the bankrupt, was and is a nonnegotiable instrument.

"V. That, by reason of the reference in each of said bonds, to the trust deed, or mortgage, the transferees thereof took the same with knowledge of all the terms and conditions of said trust deed, or mortgage.

"VI. That none of the holders of said bonds are bona fide holders thereof, or holders thereof in due course.

"VII. That each and every of the outstanding bonds of said Washington Steel & Bolt Company is a nullity.

"All of which is respectfully submitted.

"Dated July 20, 1914."

In accordance with which conclusions the referee entered this order:

"Ordered, that the claim of said petitioner, the Washington Trust Company be, and the same hereby is rejected, disallowed and expunged from the list of claims upon the record in this case. Exception of Washington Trust Co. allowed."

A few days later, to wit, on the 28th of July, 1914, the referee, upon petition of the trustee for an order of sale, which petition was contested by the trust company, entered an order directing a sale by the trustee in bankruptcy of the mortgaged property, "free of and from the lien thereof, and that the proceeds arising from the sale of said property be held by the said trustee subject to the lien of said mortgage, as if said property had not been sold, subject to the final order, judgment and decree of this court adjudicating the validity, bona fides and extent of the said mortgage."

The matter, again coming on for hearing by the court below upon review, resulted in this final judgment of the court in the matter:

"It is ordered that said report and order of July 20, 1914, be, and the same hereby is, modified to the extent of holding that $1,000 of the bonds held by C. F. Chapin, and the $2,000 of bonds held by Meta McElroy, and the $7,000 of bonds held by J. H. Osborne are valid, and as so modified said order is hereby confirmed.

"The trustee in bankruptcy duly excepts to such modification, and his exception is hereby allowed.

"And the property covered by said mortgage having been ordered sold free and clear from the lien thereof, it is hereby further ordered that the proceeds thereof be paid to Washington Trust Company on account of the claims of said Chapin, McElroy and Osborne, less such proportion of the expenses and costs as should be paid by said interests in this proceeding, and that the balance thereof, if any, less expenses of administration, be distributed among the creditors, as provided by the act October 16, 1914."

Both parties here complain of that final judgment of the court below; the trustee in bankruptcy by appeal from such portion of the judgment as holds valid any of the bonds, and the trust company by both appeal and petition for review of those portions of the judgment holding invalid any of the bonds to which it asserts a right.

Danson, Williams & Danson, of Spokane, Wash., and James B. Murphy, and Carl Kincaid, both of Seattle, Wash., for petitioner and appellant.

J. W. Russell, of Seattle, Wash., for appellee and respondent.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). [1] Under repeated rulings, the trust company was justified in resorting to both appeal and petition to bring up for review the rulings of which it complains, in order to avoid a mistake in its remedy. In re Worcester County, 102 Fed. 808, 42 C. C. A. 637; Lockman v. Lang, 132 Fed. 1, 65 C. C. A. 621; Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292; Collier on Bankruptcy (8th Ed.) 434–436. The motion to dismiss is denied.

The findings of fact and evidence show, among other things, that the $23,300, par value, of the bonds issued to McPhaden, were issued

to him by the Steel & Bolt Company in payment of money he had
theretofore advanced to the company, and that McPhaden was then
a stockholder, director, and the president of the company; and that
the $2,900, par value, of the bonds issued by the Steel & Bolt Company
to Pike were issued to him by the Steel & Bolt Company in payment
of money he had theretofore advanced to the company; and that
Pike was then a stockholder, director, and the secretary and treasurer
of the company.

It is true that the deed of trust declared that none of the bonds
should be sold or disposed of directly or indirectly at a greater dis-
count than 5 per cent. of their face value, and that the bonds above
mentioned were issued to McPhaden and Pike at 90 cents on the
dollar; but it is also true that in the resolution of the board of di-
rectors of the company providing for and authorizing the issuance
and sale of the bonds.it was provided that:

"A commission of five per cent. of the face value of the bonds of said
company be allowed to any agent, officer, or trustee of the company purchas-
ing or selling any of said bonds of said company," and that "the accounts of
A. McPhaden and A. G. Pike for money loaned to the Washington Steel & Bolt
Company to (the then) date be settled by giving them bonds of the Washington
Steel & Bolt Company, allowing them a discount of five per cent. on said
bonds, and a commission of five per cent. for selling the same, and authorizing
the trustee to issue to them bonds of said company in proportion to the
amount of the claims due each as shown by the books of the company."

It was under and pursuant to the resolution of the board of di-
rectors of the Steel & Bolt Company and upon the certificates that
have been set out, that the trustee certified and issued to McPhaden
bonds in the amount of $23,300, and to Pike similar bonds in the
amount of $2,900.

[2, 3] The record shows that subsequently and on the 30th of
April, 1909, at a meeting of the directors of the company, the Bank of
Montreal was made a depository of the company's funds, and its
banking business directed to be transferred to it from the State Bank
of Edmonds, and a resolution adopted authorizing the president and
treasurer of the company "to negotiate loans from time to time as
they deem necessary to further the interests of the company," and
directing its secretary "to notify the Washington Trust Company to
deliver to A. McPhaden bonds of the Washington Steel & Bolt Com-
pany to the amount of $20,000.00, or any part thereof, upon presen-
tation of said A. McPhaden's note to the amount of the bonds de-
livered, less five per cent. of the face value of the bonds, and five per
cent. commission; said note to draw eight per cent. interest, payable
on the date when interest on the bonds falls due."

The last-mentioned resolution purported to authorize the sale of
an additional $20,000 of the bonds at 90 cents on the dollar to Mc-
Phaden on credit. The evidence, as well as the findings of the referee,
however, shows that after the advances made by him and by Pike, for
which $23,300 and $2,900 of the bonds were respectively issued to
them, McPhaden made to the company further advances of money
for which were issued to him $11,200 of bonds at 90 cents on the
dollar. Subsequently, the company still needing money, McPhaden

went to the Bank of Montreal to borrow it, the manager of which bank inquired about the condition of the company, and McPhaden explained to him the number of bonds outstanding and by whom owned. After an examination of the company's plant by the manager of the bank, he agreed to advance to the company $20,000 at different times, upon the individual notes of McPhaden and Pike, secured by the bonds of the company that had been issued to them. And that arrangement was consummated; the aggregate loans to the company being made at four different times and in four different amounts, at the rate of 8 per cent. interest per annum.

It appears from the evidence that McPhaden received no salary as an officer of the company, but did receive 5 per cent. commission on all of the bonds that were issued to him under and pursuant to the resolution of the board of directors of the company which has been set out, in a credit to him at the time of such issue; and that Pike received a like commission in a like manner at the time of the issuance to him of the $2,900 of bonds. Subsequently, the bank demanded of the company additional security, under which demand the minutes of the board of directors of the Steel & Bolt Company show this proceeding:

"Edmonds, Wash., March 20, 1911.

"Meeting of the Board of Directors, Washington Steel & Bolt Co.

"Pursuant to notice given March 16, 1911.

"Meeting called to order by vice president.

"The following directors were present: W. R. Ammon, H. W. Hall, A. G. Pike.

"Minutes previous meeting read and approved.

"Motion made by A. G. Pike seconded by R. W. Hall that $25,000 of the company's unsold bonds be placed with the Bank of Montreal as collateral on a $20,000.00 loan that this company owes, and an order be given the Washington Trust Company to deliver same to the bank. Carried.

"Motion made by A. G. Pike to send a copy of these minutes to Dr. J. W. Cosford and Austin Ready for their consideration (they not being present). Seconded by H. W. Hall. Carried.

"There being no further business meeting adjourned.

"[Signed]    A. G. Pike, Sec'y & Treasurer.
"W. R. Ammon.
"H. W. Hall.
"J. W. Cosford, President.
"Austin Ready."

In respect to that resolution, the findings of the referee, approved by the court below, and which, in view of the evidence, we must take to be true, are as follows:

"That on, or about, the 20th day of March, 1911, a purported resolution of the board of trustees of Washington Steel & Bolt Company was prepared and sent to A. G. Pike, secretary and treasurer of said corporation, for adoption by said board. That said board of trustees at that time consisted of seven members. That no meeting of said board was called, nor did said board of trustees meet; nor did they adopt said resolution. That said Pike signed said purported resolution; that two of the other trustees—Ammon and Hall—were telephoned to to come to the office of the company to sign it. That Ammon went to the office and signed it without any other trustee being present. That afterwards Hall came there and signed it in presence of Ammon only of the trustees, and that it was taken to, and signed by two of the other trustees— Cosford and Ready—without any other member of the board of trustees being

present. That said purported resolution ·provided that $25,000 of 'unsold bonds be placed with the Bank of Montreal as collateral on a $20,000 loan that this company owes.' That upon the strength ·of said purported resolution, and not otherwise, there was issued and delivered to the Bank of Montreal $25,000 of the bonds of Washington Steel & Bolt Company, the bankrupt, which said $25,000 of bonds are a part of the bonds now held by said bank, and upon which the. trustee, the Washington Trust Company, is seeking to foreclose said trust deed, or mortgage. That the only debt owed by said bankrupt to said bank at the time said $25,000 of bonds was issued to it, as aforesaid, was that evidenced by said $20,000 notes, and there was no other or different consideration for the issuance of said $25,000 of bonds, or any of them."

In respect to the $25,000 of the bonds so issued and delivered to the bank, we have no difficulty in agreeing with the court below that they were issued without authority, and are void; that the purported resolution of March 20, 1911, was invalid; and that those bonds were issued contrary to that provision of the Constitution of the state of Washington (section 6 of article 12) prohibiting any corporation of the state from issuing "any bond or other obligation for the payment of money, except for money or property received or labor done," and contrary to the provisions of the trust deed itself.

[4] But in respect to the $26,200.00 of the bonds that were issued to McPhaden and Pike respectively, and by them assigned to the bank as collateral security for the $20,000 loaned by it to the Steel & Bolt Company, and in respect to such other of the bonds as were issued to McPhaden and by him sold for value to C. F. Chapin, Meta McElroy, J. H. Osborne, and Thomas S. Burley respectively, we are of the contrary opinion.

It is not necessary to consider how those bonds should be regarded in the hands of· the original holders, for it is not questioned that they were assigned by them to the respective transferees in good faith and for value, and we think it clear that they were negotiable instruments. They were bonds of a series of bonds expressly designed and authorized both by the resolution of the company providing for their issue, as well as by the trust deed executed by it to secure their payment, to be put upon the market and sold to raise money for the needs of the company. Upon their face it was provided, among other things, that they should pass by delivery. There is nothing in the findings of fact made by the referee and approved by the court below, nor in the evidence, tending to show any fraud in respect to those bonds even on the part of McPhaden or Pike, and certainly nothing tending to show any fraud on the part of either of the transferees. The only ground upon which it is claimed that the bonds were not negotiable instruments grows out of this clause:

"All payments upon this bond, both of the principal and interest, shall be made without deduction for any tax or taxes that said Washington Steel & Bolt Company may be, required to pay or to retain therefrom by any present or future laws of the United States of America, or of the state of Washington, said Washington Steel & Bolt Company hereby covenanting and agreeing to pay any and all such tax or taxes."

It is said that thereby the amount to become due on the bonds was rendered uncertain, and the decision of the Supreme Court of Washington, in the case of Bright v. Offield, 81 Wash. 442, 143 Pac. 159,

is cited in support of the contention. The decision there made in respect to the promissory note there in question is correctly stated in the fourth subdivision of the syllabus to that case, which is as follows:

"A note, secured by a mortgage, provided that if the maker should allow the taxes or any other public rates and assessments on the mortgaged property to become delinquent, or should do any act whereby the value of the mortgaged property should be impaired, or in case any taxes or assessments should be levied against the holder of the note on account thereof, then on the happening of any of such contingencies the whole amount secured should at once become due and payable, and the mortgagee might collect the debt and foreclose the mortgage and sell the mortgaged property, or so much thereof as should be necessary to satisfy the debts, interest, and costs, and all taxes, public rates, or assessments that might be due thereon, etc. Held, that by necessary implication the maker was bound to pay any such taxes, the provision being analogous to one authorizing the holder of the note to declare it due at any time he deemed the debt insecure, and destroyed the note's negotiability."

It is manifest that the clause in the promissory note there involved and considered is wholly unlike the clause contained in the bonds here under consideration, which expressly declares that "all payments upon this bond, both of the principal and interest, shall be made without deduction for any tax or taxes that said Washington Steel & Bolt Company may be required to pay or to retain therefrom by any present or future laws of the United States of America, or of the state of Washington," and contains the further express covenant and agreement on the part of the obligor "to pay any and all such tax or taxes"; in effect an express promise to pay both principal and interest of the bonds in full, without any deduction on account of any tax or taxes and an express covenant of the mortgagor to itself pay all such taxes. It is clear therefore that the bonds here involved are not thereby rendered in any respect uncertain as to the amount or time thereby prescribed for the payment of either principal or interest.

The case is remanded to the court below, with directions to modify its judgment in accordance with the views above expressed, with cost to the petitioner and appellant trust company.

## Amendment of Judgment.

PER CURIAM. It is ordered that there be and hereby is added to the judgment heretofore entered herein the words:

"And with a provision to the effect that the holder of any of the bonds adjudged by this court to be valid be allowed to pay by such bonds any accepted bid by such holder for the mortgaged property at any sale thereof."