## Charles J. Hruby et al., Appellees, v. Bernard Steinman et al.
## On Appeal of Bernard Steinman, Appellant.

### Gen. No. 40,700.

Opinion filed December 13, 1939.

Julius A. Polikoff and Alex Markels, both of Chicago, for appellant.

Rosenberg, Stein & Rosenberg, of Chicago, for appellees; Milton A. Gordon, of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a decree entered on December 24, 1938, by the terms of which John Toman, sheriff of Cook county, or his successor in office, was enjoined

from selling certain real estate after redemption thereof and enjoining Bernard Steinman, appellant, from asserting any title thereto.

In the complaint for an injunction it is alleged that the plaintiffs are the holders of a certificate of sale made by Robert W. Dunn, master in chancery of the superior court, on a foreclosure sale, at which the premises were sold to them. Defendant Steinman is the judgment creditor who redeemed from that foreclosure sale.

The cause was heard before the trial court on the pleadings, stipulation of facts and argument at which time the decree for the injunction was entered. Steinman, the judgment creditor, brings this appeal.

It appears that Steinman, the judgment creditor deposited with the sheriff the requisite amount of money for which the property was sold and the cost thereof.

The stipulation between the parties as to the facts is substantially as follows:

(Pars. 1-5) On February 17, 1928, Anthony J. Zelenka and Frank A. Kveton were the owners (each of an undivided one-half interest) of the real estate described in the complaint; that on said date Zelenka and wife and Kveton and wife executed bonds, aggregating $80,000; that to secure payment of said bonds Zelenka and wife and Kveton and wife executed their trust deed, conveying said premises to Cicero Trust and Savings Bank, as trustee; that on June 4, 1931, proceedings for foreclosure of said trust deed were filed in superior court of Cook county in cause entitled *"12th St. State Bank v. Zelenka, et al.,* No. 537804''; that a decree of foreclosure was entered in said cause on June 22, 1935, finding due to plaintiffs in said cause, for their own benefit, the sum of $2,110.50 and for the benefit of owners of said bonds the sum of $102,894.65.

6. If the court would admit such evidence, it would appear that plaintiffs are a committee holding bonds

aggregating $61,300 and that said bonds are held by plaintiffs for the benefit of 103 persons.

Objection is made by defendant to above facts on the ground that they are immaterial and said facts are not to be considered by the court if they are so found.

7. Pursuant to the foreclosure decree the premises were sold on July 15, 1936, by Robert W. Dunn, master in chancery of superior court, to plaintiffs for the sum of $17,000.

8. The sale was approved by the superior court and the master issued to plaintiffs his certificate of sale dated July 15, 1936. Plaintiffs hold same as trustee for the benefit of depositing bondholders.

Objection is made by defendant Steinman to fact that plaintiffs hold certificate of sale as trustee for the benefit of depositing bondholders, on the ground that said facts are immaterial.

9. If court would admit such evidence, it would appear that plaintiffs borrowed $15,000 and paid therefrom the costs of foreclosure and on May 19, 1937, paid general taxes in the sum of $6,382.65. Said taxes were paid by Frank J. Lexa, the attorney who then represented plaintiffs, but the receipted tax bills were not filed with the master.

Objection is made by defendant Steinman to above facts on the ground that they are immaterial and that inasmuch as such tax bills were not deposited with the master as provided by statute he could not, under the law, safely pay to the sheriff the said tax moneys when he made his redemption. Said facts are not to be considered by the court if they are thus found to be immaterial.

10. On September 22, 1937, John Toman, sheriff, filed with the recorder of deeds his certificate of redemption which recited that Steinman, as the holder of purported judgments, one against Zelenka and one against Kveton, deposited with said sheriff the sum of

$18,207 for redemption of the premises above described, a copy of said certificate being attached as "Exhibit A."

11. It would appear, if the court will admit such evidence, that on September 24, 1937, Steinman, through his attorney, was apprised by said Frank J. Lexa that plaintiffs had made payment of taxes and had neglected to deposit the tax receipts with the master. Subsequently, on or about September 28, 1937, Steinman offered and agreed to deposit in escrow the amount of such taxes under an escrow agreement, whereby the escrowee would be directed to pay plaintiffs all of said moneys, if upon a sale of said premises, to be held pursuant to redemption, they were sold to defendant Steinman by the sheriff and thereafter a deed was issued to him by the sheriff. Plaintiffs refused the offer.

Plaintiffs object to above facts on the ground that they are immaterial and that any offer of settlement is not proper evidence. Said facts are not to be considered by the court if they are thus found.

12. The judgment described in the sheriff's certificate of redemption as having been recovered against Kveton, et al., was recovered by Harry J. Smejkal on April 13, 1933, in the circuit court in the sum of $6,566.67 and costs; that on May 17, 1933, an execution was issued thereon and placed with the sheriff; that at the time of the rendition of said judgment and the issuance of the execution, Kveton was the owner of a half interest in said premises; that no part of said judgment has been paid, nor has it been reversed, vacated or modified; that on September 21, 1937, Smejkal assigned said judgment to Steinman.

Said judgment was purchased by Steinman for $1,500. Objection is made by Steinman to the fact as to the amount paid for said judgment, on the ground that it is immaterial and regardless of the amount paid, he had a right under the statute to redeem. Said fact

is not to be considered by the court if it is thus found to be immaterial.

13. The judgment described in the sheriff's certificate of redemption as having been recovered by Steinman against Zelenka before the justice of the peace was recovered on August 28, 1937, and said certificate refers to a transcript thereof which is attached as "Exhibit B."

14. On September 21, 1937, Steinman sued out a pluries execution on said judgment against Kveton and placed it with John Toman, sheriff, for said sheriff to execute; and at the same time placed with said sheriff an execution issued by the clerk of the circuit court on said transcript of judgment against Zelenka for said sheriff to execute. At said time Steinman also delivered to the sheriff a copy of the certificate of sale issued by Dunn, the master in chancery, which described the above premises which Steinman desired to redeem and at said time delivered to the sheriff a letter, copy of which is attached as "Exhibit C" and at said time paid to the sheriff for the use of plaintiffs, who were purchasers of the premises at said sale, their executors, etc., the sum of $18,207, being the amount of the foreclosure sale, with interest at 6 per cent from date of sale; that thereupon the sheriff indorsed on the back of each execution a levy of the premises and on September 22, 1937, recorded the certificate of redemption attached as "Exhibit A." The sheriff thereupon advertised a sale of the premises to be held on October 19, 1937, in accordance with notice of sale attached as "Exhibit D."

15. The transcript marked "Exhibit B" shows on its face that the purported judgment was based on the following summons:

"State of Illinois ⎱ ss. The People of the State of
........ County ⎰ Illinois
To any Constable of said County—Greeting

"You are hereby commended to summon Anthony J. Zelenka to appear before me at my office.......... in said County, on the 28th day of August, A. D. 1937, at 10 o'clock A. M. to answer the complaint of Bernard Steinman for failure to pay him a certain demand not exceeding Five Hundred Dollars and hereof make due return as the law directs.

"Given under my hand this 23rd day of August, A. D. 1937.

"Harry Leviton
Justice of the Peace."

16. If the Court would admit such evidence it would appear that the original summons which was issued by the justice of the peace and served upon Zelenka is as follows:

"State of Illinois ⎫ ss. The People of the State of
Cook County ⎭ Illinois to any Constable of
 said County—Greeting

"You are hereby commanded to summon Anthony J. Zelenka to appear before me at my office 2nd floor— 6818 Windsor Avenue, Berwyn, Illinois, in said county, on the 28th day of August, A. D. 1937, at 10 o'clock A. M. to answer the complaint of Bernard Steinman for failure to pay him a certain demand not exceeding Five Hundred Dollars and hereof make due return as the law directs.

"Given under my hand this 23rd day of August, A. D. 1937.

"Harry Leviton (Sgd) (seal)
Justice of the Peace."

- Plaintiffs object to above fact on the ground that it is immaterial; that the execution upon which the redemption was made was based on the transcript attached as "Exhibit B," and that said transcript is conclusive as to the facts recited therein and said fact is not to be considered by the court if it is found to be immaterial.

17. That plaintiffs advised Dunn, master in chancery, that the redemption is void and on October 16, 1937, demanded a master's deed to the premises, which the master refused to issue because of the purported redemption.

(Pars. 18–21.) That plaintiffs have not accepted the money deposited by Steinman and that said money remains on deposit with the sheriff; that Toman, as sheriff, advertised a sale of the premises in accordance with notice of sale attached as "Exhibit D," but was restrained from making same by temporary injunction entered herein; that Dunn is still a master in chancery of the superior court; that the premises involved herein are not vacant property, but are improved with an apartment building and are in the possession of a receiver appointed in the foreclosure cause.

It is further stipulated that it is the purpose and intent of this stipulation to dispense with any and all proof as to the truth of the foregoing facts and that upon the trial of this cause, no evidence shall be offered by either party in addition to the matters herein contained and that the court shall determine all questions of law and fact and proceed to judgment on the pleadings and upon this stipulation of facts, subject to the provisions of the next succeeding paragraph.

This stipulation is entered into without prejudice to the right of the defendant Bernard Steinman to contend that the circuit court of Cook county is without jurisdiction to direct Robert W. Dunn, master in chancery of the superior court, to issue his master's deed to plaintiffs, and that the superior court of Cook county is the proper forum for such relief; and that the circuit court is without jurisdiction to grant any other relief prayed in the complaint.

"Exhibit A" attached to complaint and stipulation of facts is certificate of redemption of Toman, sheriff, and is substantially as follows:

"WHEREAS, following premises in Cook County, Illinois, were on July 15, 1936, exposed for sale by Robert

W. Dunn, Master in Chancery of Superior Court, pursuant to decree of said court entered on June 22, 1935, in the cause of 12th St. State Bank v. Anthony J. Zelenka, *et al.*, No. 537804, at which sale Charles J. Hruby, John Bartunek, Mamie C. Zvolsky and H. W. Budenbender became purchasers of said premises, to wit: (Premises described in complaint, Abst. 2). The full purchase money was $17,000 and the said Charles J. Hruby, *et al.*, received from the master a certificate of sale stating that said Charles J. Hruby, *et al.* would be entitled to a deed to said premises on October 16, 1937, unless sooner redeemed; and,

"WHEREAS, 12 months have, but 15 months have not, elapsed since the date of the master's sale and said premises have not been redeemed by any defendant to said suit in which said decree was entered, or any person interested in said premises through or under any defendant to said suit; and,

"WHEREAS, Harry J. Smejkal recovered a judgment in the Circuit Court of Cook County at the March, 1933 term against Frank Kveton and others for the sum of $6,566.67, damages and costs; and said judgment has been assigned to Bernard Steinman; and,

"WHEREAS, Bernard Steinman recovered a judgment before Harry Leviton, Justice of the Peace, on August 28, 1937, as appears by transcript thereof filed in the Circuit Court on September 20, 1937, against Anthony J. Zelenka, for the sum of $144.64; and,

"WHEREAS, Bernard Steinman, assignee and judgment creditor, on September 21, 1937, sued out a pluries execution upon his judgment in the case of Harry J. Smejkal vs. Frank Kveton, *et al.*, and on September 20, 1937, sued out an execution on transcript of judgment upon his judgment against Zelenka and on September 21, 1937, and executions were placed in my hands as sheriff to execute, and I, as sheriff, endorsed on the back of both of said executions a levy of the premises above described, which Steinman, assignee

and judgment creditor, desired to redeem from said Master's sale; and,

"WHEREAS, Steinman on September 21, 1937, in accordance with the statute, paid to me, as sheriff, the sum of $18,207, being the amount for which said premises were sold at the master's sale, with interest at 6 per cent per annum from date of sale, said sum being in full for redemption from said master's sale:

"Now, THEREFORE, I, John Toman, Sheriff of Cook County, do certify that said premises have this day been redeemed from said master's sale by Bernard Steinman, in accordance with the provisions of the statute. (Dated September 21, 1937).

John Toman, Sheriff."

"Exhibit B" attached to complaint and stipulation of facts is a transcript of judgment recovered before Harry Leviton, justice of the peace, in the case of *Bernard Steinman v. Anthony J. Zelenka.* Said transcript contains what purports to be a copy of the summons issued by the justice; the return of the constable showing service on Zelenka; a copy of the justice's docket from which it appears that on August 28, 1937, judgment for $144.64 was rendered in favor of Steinman and against Zelenka; a copy of the execution issued by the justice with the constable's return thereon and the certificate of the justice certifying that it is a true and complete transcript of the proceedings in said cause; copy of summons contained in said transcript is set forth (Abst. 15).

"Exhibit C" attached to stipulation of facts is letter dated September 21, 1937, from Alex Markels to John Toman, sheriff, and is substantially as follows:

"I hereby hand you an execution issued by the Clerk of the Circuit Court upon the judgment in favor of Harry J. Smejkal and assigned by him to Bernard Steinman, plaintiff, against Frank Kveton, *et al.,* in case No. B–203077, for the sum of $6,566.67 and costs; also execution from the Clerk of the Circuit Court

upon the judgment in favor of Bernard Steinman, plaintiff, against Anthony J. Zelenka, defendant, in case No. J. P. Transcript 31743 for the sum of $144.64 and costs of suit, and hereby request that you execute both of said executions.

"I also hand you a certified copy of certificate of sale issued by Robert W. Dunn, Master in Chancery of the Superior Court of Cook County in cause No. 537804, entitled Twelfth Street State Bank vs. Anthony J. Zelenka, *et al.*, which was dated October 24, 1936, in connection with the sale of the premises described as: (Premises described in complaint, Abst. 2).

"Said Bernard Steinman, by reason of the execution first above described, is the judgment creditor of Frank Kveton, defendant in said cause entitled Twelfth Street State Bank *vs.* Zelenka, *et al.*, a former owner of an undivided one-half interest in said premises, and by reason of the execution secondly above described is the judgment creditor of Anthony J. Zelenka, defendant in said cause entitled Twelfth Street State Bank *vs.* Zelenka, a former owner of an undivided one-half interest in said premises, and desires to make a redemption as a judgment creditor under each and both of said executions of the whole of said premises, from the sale evidenced by said certificate of sale.

"The undersigned on behalf of Bernard Steinman does hereby tender to you for the use of the purchasers of said premises, their heirs, executors, administrators or assigns, the sum of $18,207.00, being the amount for which the premises to be redeemed were sold, together with interest thereon at the rate of 6% per annum from the date of such sale, also all costs in connection with said redemption are handed you herewith.

"No redemption from said sale was made by any defendant in said cause of Twelfth Street State Bank *vs.* Anthony J. Zelenka, Superior Court No. 537804, or by his or their heirs, executors, administrators or

assigns, or by any person interested in said premises through or under the defendants, within twelve months from the date of said sale.

"Will you kindly endorse upon the back of each of said executions the levy of the premises described to be redeemed and take and perform such acts as are required by Section 20, Chapter 77 of the Illinois Revised Statutes, 1937, and all other applicable sections of said Chapter 77.

"The premises above described are not a homestead and are not registered under the Torrens system.

"(signed) Alex Markels
Attorney for Bernard Steinman."

Sheriff's notice of sale attached to complaint as "Exhibit C" and to stipulation of facts as "Exhibit D" is substantially as follows:

"By virtue of a redemption from a master's sale and a certain pluries execution from the Circuit Court of Cook County in favor of Harry J. Smejkal (Bernard Steinman, assignee) and against Frank Kveton, *et al.*, and also by virtue of a certain execution issued from the Circuit Court of Cook County on a transcript of judgment from a J. P. in favor of Bernard Steinman and against Anthony J. Zelenka, I shall, at ten o'clock A. M. on October 19, 1937, at the east entrance of the Cook County Court House in Chicago offer for sale at public vendue the premises hereinafter described, to wit: (premises described in complaint, Abst. 2). Dated September 25, 1937.

(Signed) John Toman, Sheriff."

The court did not rule as to the validity of the offers of evidence which were reserved for decision by its terms, as contained in the stipulation, nor did counsel insist that it do so.

A decree was entered by the court on December 24, 1938, which was in substance as follows: that the temporary injunction issued was made permanent, and that the sheriff, or his successor in office, be and they

were perpetually enjoined from selling the property heretofore described, under and pursuant to the certificate of redemption issued by him and filed in the office of the recorder of deeds of Cook county, Illinois on September 27, 1937, or under the purported redemption or levy described therein; that said sheriff was further perpetually enjoined from issuing any certificate or deed to the premises based on said levy, purported redemption or sale; that Steinman was permanently enjoined from causing any sale to be held or from asserting any right, title, interest or lien, into or upon the said real· estate based on the purported redemption or levy described in said certificate of redemption of the sheriff and was further permanently enjoined from prosecuting or attempting to prosecute any suit or action to obtain possession of said premises, title thereto, or any interest therein based on said levy, purported redemption, or any sale held pursuant thereto.

The injunction further ordered that the sheriff of Cook county, or his successor in office pay over to said Bernard Steinman upon demand and payment of his costs, the moneys received by him from the said Bernard Steinman, as recited in the said certificates of redemption and that plaintiffs have and recover from the defendant Bernard Steinman their costs herein and that execution issue therefor as provided by law.

Plaintiffs' contention, as we understand it, is:

First: There being two executions against the owners of the real estate, that the sheriff may not sell as a whole on two executions;

Second: The right of redemption is statutory and must be exercised pursuant to the statute;

Third: A judgment creditor having a judgment against the holder of an undivided one-half interest in real estate is entitled to redeem only the undivided interest of his judgment debtor.

Defendant contends that the redemption is not void for the following reasons:

First: The holder of a certificate of sale is entitled only to the redemption money, and, if one entitled to redeem, makes redemption, the certificate holder has no legal ground for complaint;

Second: Steinman was a judgment creditor entitled to redeem, and, in redeeming, he complied with the statute;

Third: The redemption is not void because Steinman placed two executions with the sheriff, one against each co-owner;

Fourth: The redemption is not void because Steinman paid the full redemption money;

Fifth: The redemption is not void because of the form and content of the sheriff's certificate of redemption;

Sixth: The redemption is not void because of the form and content of the sheriff's notice of a sale which was never held; and,

Seventh: The statute on redemptions is given a liberal construction.

Chapter 77, pars. 19 and 20, secs. 19 and 20, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.170, 107.171], read as follows:

"19. CERTIFICATE OF REDEMPTION—TO BE RECORDED.] § 19.. In all cases of redemption of land from sale had under any execution, judgment, order or decree, it shall be the duty of the purchaser, sheriff, master in chancery or other officer or person from whom said redemption takes place, to make out an instrument in writing, under his hand and seal, evidencing said redemption, which shall be recorded in the recorder's office of the proper county, in like manner as other writings effecting the title to real estate are filed and recorded, which recording shall be paid for by the party redeeming. . . .

"20. REDEMPTION BY CREDITOR, ETC.] § 20. If such redemption is not made, any decree or judgment creditor, his heirs, executors, administrators or assigns may, after the expiration of twelve months and within fifteen months after the sale, and when any sale is had under any order or decree of foreclosure upon a mortgage or trust deed executed by a corporation and containing a waiver of the right of redemption any decree or judgment creditor of such corporation may within three months after the sale, redeem the premises in the following manner: such creditor, so entitled to redeem, his heirs, executors, administrators or assigns may sue out an execution upon his judgment or decree, and place the same in the hands of the sheriff or other proper officer to execute the same, who shall endorse upon the bank thereof a levy of the premises desired to be redeemed; and the person so entitled and desiring to make such redemption shall pay to such officer the amount for which the premises to be redeemed were sold, with interest thereon at the rate of six per centum per annum from the date of the sale, for the use of the purchaser of such premises, his executors, administrators or assigns, whereupon such officer shall make and file in the office of the recorder of the county in which the premises are situated a certificate of such redemption, and shall advertise and offer the premises for sale under said execution as in other cases of sale or execution.''

A motion was made in this court to dismiss the appeal, which motion was reserved to a final hearing, and after due consideration thereof, it is hereby denied.

We have recited the record at considerable length as it has been abstracted for our consideration. The substance of the controversy is this: A property upon which a mortgage was foreclosed was sold by the master. Thereafter the defendant herein attempted to redeem from the master's sale by paying the amount for which it was sold by the master, plus 6 per cent in-

terest and costs by virtue of two judgments,—one against each of the individuals, tenants in common, who were the owners of the fee title to the property and against whom the judgment in foreclosure had been entered. One of the judgments against Zelenka, taken before a justice of the peace is conceded to be invalid because of some objection to the jurisdiction of the justice of the peace who rendered the judgment. That being true, then the defendant Steinman would not be a judgment creditor as contemplated by the statute in so far as that particular judgment is concerned. So, the remaining question is whether or not, with the valid judgment for $6,566.67 against Kveton who was an owner of an undivided one-half of the property, there can be a redemption as to such undivided interest under the statute.

Let us consider the purposes of the statute of redemption and the rights of the parties as determined by the statutes and the decisions of our courts.

In the case of *Phillips v. Demoss,* 14 Ill. 409, Mr. Justice CATON had this to say about the rights of the parties in redemption, and it has been the law of the state ever since:

"At the October term, 1850, Woods, Christy & Co. obtained a judgment against S. R. Drury and Isaiah Drury, upon which an execution was issued, and levied upon the undivided five eighths of north-east quarter of section five; also the north half of the east half of north-east quarter of section five; also the undivided eighth part of north-east quarter of section five; also the south-east quarter of section six; also the south half of section nineteen; also the east half of north-west quarter of section twenty, and the north-east half of section twenty; all in town sixteen, north range five, west of fourth meridian; which premises were sold to one of the plaintiffs in the execution, on the 31st of December, 1850.

"On the 31st of February, 1852, the purchaser assigned the certificate of purchase to the complainant, who, after the expiration of fifteen months from the day of sale, demanded a deed of the sheriff, who refused to execute it. The premises designated in the first, second, and fourth descriptions above given, belonged to S. R. Drury, and the balance to Isaiah Drury.

"On the 19th of February, 1852, Demoss obtained a judgment before a justice of the peace, against the Drurys, by confession, on a promissory note made by them, dated February 10th, 1852. On the 12th of March, 1852, the justice issued an execution on the judgment, and placed it in the hands of a constable, who, on the same day, returned the execution unsatisfied. On the 17th of March, 1852, a transcript of the justice's judgment was filed in the circuit clerk's office, and, on the same day, an execution was issued from the office of the clerk of the circuit court, which was immediately levied upon the above-described property. Demoss then redeemed from the sale under the first execution, by paying the necessary amount of redemption money, and taking from the sheriff a certificate of redemption. The sheriff then again sold the premises under the last execution, when Demoss bid the amount of the redemption money, with interest, and no more, and on that bid the premises were struck off to him.

"The bill charges, that the last judgment was fraudulently confessed by the defendants, 'for the sole purpose of creating a judgment creditor, by whom they could effect a redemption of their lands.'

"At the time of the return of the execution, issued by the justice, unsatisfied, the defendants had personal property, out of which the amount of that judgment might have been made, which was well known to both the constable and Demoss.

"At the November term, 1851, of the circuit court, Guyre, for the use of Phillips, obtained a judgment against S. R. Drury and three others; upon which

Demoss, claiming to be the assignee of the judgment, caused an execution to be issued, which was levied upon the same property, and upon which it was again sold on the 24th of April, 1852, to Demoss, as a judgment creditor, for the amount of the redemption money and costs.

'It is unnecessary to give the subsequent statements of the bill, showing how the premises have been since disposed of.

'We will first consider the question of fraud as set up in the bill. The substance of that charge is, that the first judgment, which was recovered by Demoss against the Drurys, was confessed by them upon a promissory note, which they had executed; and that it was confessed for the purpose of enabling them to redeem the premises from the first sale. The statute says, that 'any judgment creditor' shall have the right to redeem from the first sale. In this case, there is no question that Demoss was such judgment creditor; nor is any question made that as such he did redeem. He exercised then but his legal right. There is no pretence that the debt for which the judgment was confessed was not justly due and owing. But, then, it was confessed for the purpose of creating a judgment, under which a redemption might be made. Does that render it either unlawful or inequitable? Does it violate any of the legal or equitable rights of the first purchaser? We think not. He acquired the alternative right by that first purchase, either to receive the redemption money, which might be paid to the sheriff by the judgment debtors, should they redeem within twelve months, or which might be paid by any junior judgment creditor after the expiration of the twelve months, and before the expiration of fifteen months; or, in case no such redemption should be made either by the judgment debtors or by a judgment creditor, then to a sheriff's deed. By his purchase he acquired no title to the land, either legal or equitable. His right

to the land was no higher or more sacred than it was to the redemption money. When he purchased, knowing that he must either get his purchase-money back again, with ten per cent, upon it, within fifteen months, or get the land, he was aware that others, and not himself, had the right to say which he should take. This was the alternative character of his investment. He knew that either the judgment debtor or any junior judgment creditor might determine that he should take the redemption money instead of the land, and by such determination he was bound by the terms of the law under which he purchased. In view of this he made his bids. The policy of the law is to encourage these redemptions, rather than to suppress them. It was said by this court in the case of *Swezy v. Chandler,* 11 Illinois, 449: 'The object of the legislature, in allowing judgment creditors to redeem, was to prevent a sacrifice of the defendant's estate, and to make it pay as many of his debts as possible.' If this be the policy of the law, it is but carrying out its purposes, for the debtor to confess a judgment for an honest debt which he owes, for the express purpose of enabling his creditor to redeem, with the hope of realizing more at a second sale, and thus secure a further payment of his debts. The statute holds out no inducements for a speculation at a sheriff's sale, beyond ten per cent. for the use of the purchase-money and the purchaser can set up no equitable claim beyond that where the redemption is made according to the provisions of the statute. If the judgment under which the redemption was made had been confessed when no debt was due, the case would be widely different, and quite another question would be presented; but that is not pretended. On the contrary, the bill shows that it was on a note executed by the judgment debtors, and there is not an intimation that the note was not *bona fide* due and owing. It is also averred, that they confessed the judgment for the purpose of enabling themselves to redeem,

after the time within which they had a right to redeem. . . .

"There was another objection made upon the argument which we may notice. It was said, that in order to entitle a judgment creditor to redeem, he should have a judgment either at the time of the sale from which he redeems, or at least before the expiration of the twelve months, within which the judgment debtor may redeem. The statute does not say so; but it says, that any judgment debtor may redeem. He may get his judgment the last hour of the fifteen months; and he is as much within both the letter and intention of the statute as if it were of a year's standing."

The law is as declared in the opinion written by Mr. Justice Caton in 14 Ill. 409, the greater part of which opinion we have cited. It applies to plaintiffs' interest in the premises, wherein the court says:

"By his purchase he acquired no title to the land, either legal or equitable. His right to the land was no higher or more sacred than it was to the redemption money."

In the instant case, in what way are plaintiffs injured? An amount of money equal to that which plaintiffs paid at the master's sale was deposited by defendant Steinman with the sheriff, in order to redeem from said master's sale, and this amount with costs and interest could have been received by them upon making application for it. And, as plaintiffs could acquire no interest in the real estate until after the expiration of 15 months following the master's sale, at which time they would either obtain a deed to the property or get their money back with interest, no loss was sustained. The statute has made ample provision to protect against such loss or injury in this and similar cases. It may well be that the purchaser at the sheriff's sale will not receive a clear title to the property which he purchases, but that is not the concern of plaintiffs. The rule of *caveat emptor* applies and

whether the purchaser does or does not receive a good title, is no concern of plaintiffs.

In passing upon the redemption law, we call attention to ch. 77, par. 25, sec. 25, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.176], which reads as follows:

"25. REDEMPTION OF PARTS AS SOLD.] § 25. Any person entitled to redeem may redeem the whole or any part of the premises sold, in like distinct parcels or quantities in which the same were sold."

In considering the foregoing section in the case of *Carabelli v. Carabelli*, 266 Ill. App. 453, it is therein stated:

"The various sections of Cahill's St. ch. 77, relating to redemption, ¶¶ 20, 21, 22, 25 and 26, must be construed so as to give effect to the legislative will, bearing in mind that redemptions are looked upon with favor, and where no injury is to follow, a liberal construction will be given to the redemption laws."

A great deal has been said in the arguments by counsel relative to the plight of the bondholders if this redemption is permitted to stand. The bid made at the sale was very low and apparently, from the tenor of the bill, plaintiffs had hoped that no one would redeem so that they might become the owners of the property. Plaintiffs' counsel calls attention to this by saying: "Courts have gone far in modern cases to protect the rights of innocent bondholders." Citing *Pflueger v. Broadway Trust & Savings Bank*, 351 Ill. 170; *Oswianza v. Wengler & Mandell, Inc.*, 358 Ill. 302.

We do not think the facts in either of the cases just cited justify us in an attempt to protect the rights of innocent bondholders. So far as we can discern the defendant Steinman is in the same position as the so-called innocent bondholders. He is trying to collect money which apparently is owing to him, so that we could not protect one side without wrongfully injuring the other which is definitely not the function of this court.

The purpose for which a redemption sale is made, as provided by statute, is as was said by Mr. Justice CATON:

" 'The object of the legislature, in allowing judgment creditors to redeem, was to prevent a sacrifice of the defendant's estate, and to make it pay as many of his debts as possible.' . . . The statute holds out no inducements for a speculation at a sheriff's sale, beyond ten per cent. for the use of the purchase money, and the purchaser can set up no equitable claim beyond that where the redemption is made according to the provisions of the statute."

The injunction should not be permitted to stand because of the inequitable position taken by the plaintiffs. While this suit was pending, although they obtained an injunction for the purpose of preserving a status, the plaintiffs demanded and obtained from the master in chancery a deed of sale, although the running of the time for the issuance of the bill of sale was caused by the issuance of the injunction which was supposed to stop all proceedings. In addition to that they set up as part of their equitable consideration that they had borrowed $15,000 on the certificate of sale or deed and for that reason they should receive consideration in a court of equity. A complainant cannot be permitted to obtain any advantage in a court of equity by such inequitable conduct. If, what plaintiffs say is true, namely, that this is now a "moot" case, then the maxim "he who seeks equity must do equity" has been entirely ignored. No case has been cited by plaintiffs in support of the contention that where a sheriff has two executions against two tenants in common of certain real estate, and one of the judgments against one of the tenants is found to be invalid, why the sheriff cannot proceed and sell the interest of the other tenant in common for the amount of the judgment against him. Especially, where the entire amount of the foreclosure sale has been deposited with the sheriff as

shown by his certificate, and the original purchaser at the master's sale has available to him all the money that he bid at his sale covering the entire property with interest and costs.

We have carefully gone over this record and we do not see where the plaintiffs' have shown any equities that justify the intervention of a court of chancery, and, particularly so, where the extraordinary relief by injunction is used as in this case for the purpose of protecting the plaintiffs and permitting them to do an inequitable act and obtain an alleged title, by demanding and receiving from the master a deed to the property, whilst the defendant and the sheriff are at the same time prevented from exercising their rights and duties as provided by statute.

For the reasons herein given, the injunctional order should be dissolved and the judgment order is hereby reversed and the cause is remanded with directions to dissolve the injunction herein and to dismiss the suit for want of equity.

*Judgment order reversed and cause remanded with directions.*

HEBEL and BURKE, JJ., concur.