Mr. Justice NELSON
 

 delivered the'opinion of the court.
 

 This is- a writ of error to the Circuit Court of the United States for the district of Massachusetts.
 

 The suit was brought in the court below by the .plaintiff White) against the company, upon several bonds issued by the same.
 

 The case was presented to the court upon an agreed state of facts, and, among others, that the bonds in question were issued by the company, in regular course, and for a sufficient consideration;- and that payment had been demanded and refused. Coupons for the accruing interest, previous to the maturity of the bonds, had been duly paid.
 

 It was further agreed that bonds of this description, issued by-the company, were sold in the market, and passed from hand to hand by delivery, at prices varying according to the state of the market; and that those in question were issued at or about their date, to a person a citizen of Massachusetts, and were payable in blank, no .payee being inserted; that they came into the hands of the plaintiff through several intervening holders, in regular course ; and-that he then and since lived in the State of New Hampshire, and, before this suit was brought, filled up the blank by inserting “ Selden E. White, or order,” the name of plaintiff, without the knowledge or consent of the defendants.
 

 The court ruled that the suit could not be sustained, for Want of jurisdiction.
 

 The ground upon which this ruling below is sought to be maintained is, that these bonds were issued to citizens of Massachusetts; and as they could hot be regarded as negotiaole instruments, or, if negotiable, not payable to bearer; the plaintiff was disabled from suing in the Federal court, within the prohibition of the eleventh section of the judiciary act. (15 Pet. R., 125;
 
 2
 
 ib., 318; 3 How., 574; 8 ib., 441.)
 

 In answer to this ground, we think it quite clear, on looking into the agreed-state of facts, in connection with the bonds and
 
 *577
 
 the mortgage given to secure their payment, that it was the intention of the company, hy issuing the
 
 bonds
 
 in blank, to make them negotiable, and payable to the holder, as beater, and that the holder might fill up the blank with his own name, or make them payable to himself or hearer, or to order. . In other words, the company intended, by the blank, to leave the holder his option as. to the form or character of negotiability, without restriction. If the utmost latitude, in this respect, was not intended, why leave the payee in blank when issuing the bonds, or why not fix the limit of negotiability, or negative it altogether ?' To adopt any. other conclusion would seem to us to be unjust, to the company, for then the blank would be wholly unmeaning; or if any, a meaning calculated, if not intended, to embarrass the title of the holder..
 

 Assuming, then, that these-bonds were intended to be made negotiable, we do not see the difficulty suggested in maintaining the suit in the Federal court; for, until the plaintiff chose to fill up the blank, he is to be regarded as holding the bonds as bearer, and held them in this character till made payable to
 

 - himself or order. At that time he was a citizen of New Hampshire, and, therefore, competent to bring the suit in the court below.
 

 As to the negotiability of this class of securities, when shown to be intended that, they should possess this character by the form in which issued, and mode of giving them circulation, we think the usage and practice of the companies themselves, and of the capitalists and business men of the country, dealing.in them, as well as the repeated decisions or . recognition of the principle by courts and judges of the highest respectability, have settled the question. (Morris Canal Co.
 
 v.
 
 Fisher, 1 Stockton, 667, 699; Delafield
 
 v.
 
 State of Illinois, 2 Hill N. Y., 177; 8 Paige Ch. R., 527, S. C.; Mich. Bank
 
 v.
 
 N. Y. and N. H. R. R. Co., 3 Kern R., 625; Carr
 
 v.
 
 Le Fevre, 27 Penn. R., 418; Craig
 
 v.
 
 The City of Vicksburg, 31 Miss. R., 216; Chester
 
 W.
 
 Chapin
 
 v.
 
 The Vt. and Mass. R. R. Co., decided Sept. 7, 1857, in Sup. C. of Mass.)
 

 Indeed, without conceding to them the quality of negotiability, much of the value of these securities in the market, and
 
 *578
 
 as a means of furnishing the funds for the accomplishment of many of the greatest and most useful enterprises of the day, would be impaired. Within the last few years, large masses of them have gone into general, circulation, and in which capitalists have invested their money; and it is not too much to ■ say, that a great share of the confidence they have acquired, as a desirable security for investment, is attributable to this negotiable quality, as well on accouut of the facility of passing from hand to hand, as the protection afforded to the
 
 bona 'fide
 
 holder.
 

 It is. true that in England the law is, that a bond delivered in blank, as it respects the payee, is void, and the blank incapable of being filled up by the holder, either , upon an implied or express parol authority from the maker. This is maintained upon the principle that the authority of an agent to make a deed for another must be by deed;-and, also, that to’ admit the parol authority to fill up the blank would, in effect, make á bond transferable and negotiable, like a bill of exchange or exchequer bill. (Hibble White
 
 v.
 
 McMorine, 6 Mees. and Welsb., p. 200; and Enthoven
 
 v.
 
 Hoyle et al., in the Exch., 9 Eng. L. and Eq. R., 434.)
 

 The law had been otherwise held by Lord Mansfield, in the case of Texira
 
 v.
 
 Evans, cited in Masten
 
 v.
 
 Miller, (1 Anstruther, 228;) but was distinctly overruled by Park, Bi, in delivering the opinion of the court in the case first above cited, and the opinion reaffirmed by him still more strongly in the second case.
 

 Courts of the highest authority in this country have -followed Lord Mansfield, and have not hesitated to meet the fears expressed by Park, B., (that the effect would be to make bonds negotiable,) by admitting the consequence. Chief Justice Marshall, in the case of the United States
 
 v.
 
 Nelson & Myers, (2 Brock. R., 64,) hesitated to reach this conclusion, but expressed a strong belief that, at some future day, it would be by this court.
 

 We think, for the reasons abov.e given, the ruling of the court below cannot'be upheld, and that the judgment should oe reversed, with a
 
 venire de
 
 novo, &c. - ’