(No. 21272.—

ALEXANDER W. PFLUEGER, Plaintiff in Error, *vs.* THE BROADWAY TRUST AND SAVINGS BANK, Defendant in Error.

*Opinion filed December 23, 1932—Rehearing denied Feb. 18, 1933.*

FISHER, BOYDEN, BELL, BOYD & MARSHALL, (THOMAS L. MARSHALL, and DAVID A. WATTS, of counsel,) for plaintiff in error.

DENT, WEICHELT & HAMPTON, (LOUIS L. DENT, of counsel,) for defendant in error.

CHAPMAN & CUTLER, TENNEY, HARDING, SHERMAN & ROGERS, and WINSTON, STRAWN & SHAW, (CHARLES M. THOMSON, HORACE K. TENNEY, and JAMES H. WINSTON, for the Harris Trust and Savings Bank *et al. amici curiæ.*

Mr. JUSTICE ORR delivered the opinion of the court:

An action of replevin was brought by plaintiff in error, Alexander W. Pflueger, in the circuit court of Cook county, against the Broadway Trust and Savings Bank, defendant in error, for the recovery of three $1000 debenture bonds issued by the Container Corporation of America. There were pleas by defendant in error of not guilty and a special plea alleging that the bonds were payable to bearer and negotiable; that they were negotiated before maturity, and that defendant in error took them without knowledge of any defect of title and became the holder thereof in due course. There was a trial by the court without a jury, resulting in a finding for plaintiff in error and judgment for possession and costs in his favor. From that judgment an appeal was taken to the Appellate Court for the First District, where the judgment of the trial court was reversed, with a finding of fact that the right of property and of possession were in defendant in error and that the debentures were negotiable instruments. This court then granted *certiorari* to review the action of the Appellate Court.

The material facts as found by the Appellate Court are not in dispute. On December 26, 1926, the defendant in error bank accepted the three $1000 debentures as collateral security for a seven-day loan of $2500 made to a customer,

Herbert Hoffmeyer, who gave his note for the amount of the loan, which is unpaid. Defendant in error knew that Hoffmeyer was employed by a hotel near its place of business, and before accepting the debentures ascertained, either by published reports or by inquiry, that the debentures were selling at a price of par or better. The trial court found that in accepting the debentures defendant in error acted in good faith and was not negligent. The evidence further shows that plaintiff in error, who was the owner of the debentures, placed them in a safe at 111 West Washington street, from which they were stolen about April 9, 1928, by some unknown person or persons. Eleven days before the debentures were pledged to defendant in error they had been called for payment pursuant to the terms of a certain trust indenture executed by the corporation at the time the debentures were first issued. The first sentence of the writing on the face of each of the debentures is as follows: "For value received, the Container Corporation of America, (hereinafter referred to as the company,) a corporation organized and existing under the laws of the State of Delaware, promises to pay to bearer, or, if this debenture be registered, to the registered owner hereof, on June 15, 1936, the principal sum of one thousand dollars and to pay interest thereon from the date hereof at the rate of six per cent per annum, semi-annually, on December 15 and June 15 in each year." Other provisions appear upon the face of the debentures, to the effect that interest due before maturity will be paid only on surrender of the interest coupons; that both principal and interest are payable at the office of the trustee in the borough of Manhattan, city and State of New York, in gold coin, etc., "without deduction for any Federal income tax thereon or with respect thereto, not in excess of two per cent of such interest in any year, which the company or the trustee may be required or permitted to pay thereon or retain or deduct therefrom under any present or future law of the United States of America;" that

the debenture is one of an authorized issue of $1,000,000, all issued under a certain trust agreement dated as of June 15, 1926, "to which trust agreement reference is hereby made for a statement of the terms under which the said debentures are issued, and the rights and obligations of the company, of the trustee and of the respective holders of the said debentures under the said trust agreement;" that to the extent provided in the trust agreement all rights or action upon the debenture are vested in the trustee. There is a further provision to the effect that recourse for payment of either principal or interest or for claim under the trust agreement may not be had or made against any incorporator, stockholder, officer or director of the company or of any successor corporation, either directly or indirectly, by virtue of any constitution, statute, provision or rule of law, "all such liability being by the acceptance of this indenture and as a part of the consideration for the issue hereof expressly released, as provided in the said trust agreement."

Section 29 of the trust agreement states that, except as therein provided, no holder shall have the right to institute any suit, action or proceeding at law or in equity upon or with respect to the agreement or for the execution of any trust or power thereof, or for any other remedy under or upon the agreement or with respect to any of the bonds or interest coupons secured thereby, without first giving to the trustee written notice of an existing default or tendering to the trustee security and indemnity satisfactory to it; nor also unless the holders of twenty-five per cent in the aggregate amount of the outstanding bonds shall have requested the trustee, in writing, to take action with respect to such default and the trustee shall have declined to take such action or shall have failed to do so within thirty days thereafter, "it being understood and intended that no holder of any bond or interest coupon or claim for interest shall have any right in any manner to enforce any right or remedy hereunder, or under or with respect to any of the bonds, ex-

cept in the manner herein provided, and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided, and for the equal benefit of all holders of outstanding bonds."

Each of the debentures provides that it may be redeemed, at the option of the company, upon any semi-annual interest date prior to maturity, upon at least thirty days' prior notice published in a daily newspaper of general circulation printed in the English language, published in the borough of Manhattan, city and state of New York, at the price and upon the terms stated. Section 14 of the trust agreement provides that notice having been given and cash for redemption deposited, "the said bonds shall on the redemption date designated in such notice become due and payable at the said head office of the trustee." There is a further provision that after the date fixed for redemption the bonds shall cease to bear interest.

The principal question involved is, Were the debentures negotiable instruments? If they were, it is conceded by plaintiff in error that the judgment of the Appellate Court is correct.

Section 1 of the Negotiable Instrument act (Smith's Stat. 1931, chap. 98, art. 1, par. 21, p. 1964,) provides, among other things, that an instrument to be negotiable must contain an unconditional promise or order to pay a sum certain in money, payable to bearer or a specified person on demand or at a fixed or determinable future time. Section 52 provides that a holder in due course is one who takes an instrument which is complete and regular upon its face; it must be taken before it is overdue, without notice of previous dishonor; it must be taken in good faith and for value, and at the time it is negotiated the person securing it must have no notice of any infirmities in the instrument or defects in the title of the person negotiating it. A recital in a promissory note or bond, or a reference in it to some other instrument, in order to destroy its negotiability must

be of such a nature that the recital in the bond or the reference to the other instrument qualifies or makes uncertain or conditional the promise to pay. (*People* v. *Gould,* 347 Ill. 298; *Zollman* v. *Jackson Trust and Savings Bank,* 238 id. 290; *Chicago Trust and Savings Bank* v. *Chicago Title and Trust Co.* 190 id. 404.) If the note or bond merely recites that it is a part of a certain agreement which does not affect the promise to pay, it is negotiable. (*Utah Land Irrigation Co.* v. *Allen,* 64 Utah, 511, 231 Pac. 118.) Whether a written instrument is negotiable must be determined from the writing itself. Its negotiability cannot depend upon extrinsic evidence. (*Equitable Trust Co.* v. *Harger,* 258 Ill. 615.) In *Enoch* v. *Brandon,* 249 N. Y. 263, the New York Court of Appeals said: "If in the bond or note anything appears requiring reference to another document to determine whether, in fact, the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional. What that document may contain is immaterial. Reference to the paper itself said to be negotiable determines its character. * * * Further, where the meaning is doubtful we must adopt the construction most favorable to the bondholder."

Plaintiff in error's argument that the debentures are non-negotiable is based primarily on the clause therein which recites that the debentures are issued under a certain trust agreement, "to which trust agreement reference is hereby made for a statement of the terms under which the said debentures are issued and the rights and obligations of the company, of the trustee and of the respective holders of the said debentures under the said trust agreement." Plaintiff in error contends that this clause so modifies the unconditional promise to pay that it renders the debentures non-negotiable. In order for the clause above quoted to render the debenture non-negotiable it must be of such a nature that it qualifies or makes uncertain or conditional the un-

conditional promise to pay. Whether this clause modifies the unconditional promise to pay must be determined from the writing itself and not from extrinsic evidence. Section 3 of the Negotiable Instrument act provides that an unqualified order or promise to pay is unconditional within the meaning of the statute though coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, or a statement of the transaction which gives rise to the instrument; but an order or promise to pay out of a particular fund is not unconditional.

If a prospective purchaser wanted to buy these debentures, he would, upon reading them, first find an unconditional promise to pay a sum certain of money to bearer at a fixed future time. The quoted reference to the trust agreement in the debenture does not affect this unconditional promise to pay but only means that the holder is re-ferred to the trust agreement for his rights under that agreement. This distinction between the unconditional promise to pay under the debenture and the reference to other rights of the holder under the trust agreement is clearly drawn by the Supreme Court of Michigan in *Paepcke* v. *Paine,* 253 Mich. 636, where the same issue was raised under the same section of the Uniform Negotiable Instruments law respecting debentures of the Container Corporation of America of the same series as are involved in this case. There the court said: "The reference in the bond above quoted does not assume to in any way affect the unconditional promise to pay. A purchaser is referred to the trust agreement for a statement of the rights and obligations of the company, the trustee and the holders of the bonds 'under the said trust agreement.' It in no way refers to or qualifies the unconditional promise of the company to pay the bond at maturity, theretofore clearly expressed. The reference gives notice to the bondholder that he may examine the trust agreement to ascertain the nature and kind

of the security pledged to insure payment and the procedure provided for to enforce the same should he care to do so before making purchase thereof, but it in no way imposes that duty upon him in order to determine the status of the bond as a negotiable instrument. In *Enoch* v. *Brandon, supra,* page 268 of 249 N. Y., 164 N. E. 45, 47, in discussing the reference the court said: 'We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser scanning the bonds would have the same thought.' (See, also, *Hibbs* v. *Brown,* 190 N. Y. 167, 82 N. E. 1108.) There is a clear distinction between this reference and that contained in *Allan* v. *Moline Plow Co.* (C. C. A.) 14 F. 2d 912, and *Crosthwaite* v. *Moline Plow Co.* (D. C.) 298 F. 466, 468, relied on by plaintiff, where there was reference to a trust agreement 'for a description of the terms under which the said notes are issued and of the rights and obligations of the company and the trustee with respect thereto.' Under this reference the trust instrument must be examined to determine the rights and obligations of the company under the notes; in that before us it applies only to the rights and obligations under the trust agreement."

Much reliance is also placed by plaintiff in error on another sentence of the debentures which it is claimed makes the instruments non-negotiable. This sentence reads as follows: "To the extent provided in the said trust agreement all rights of action upon this debenture are vested in the trustee." Here, again, the Supreme Court of Michigan, in passing upon the same contention in *Paepcke* v. *Paine, supra,* said: "The effect of the provision must be determined from the language used. It can have no application except in case of default, as no right of action can accrue until that

time. The provision is in the nature of an agreement among the bondholders that the trustee shall represent all of them in any action which may be brought to enforce collection. * * * It does not prescribe the right of a holder to sue in his own name as a necessary element of negotiability. This provision in the bond contains no intimation that the promise to pay, or the time of payment, is affected thereby. Under it the right to bring action to enforce the promise is, 'to the extent provided in said trust agreement,' vested in the trustee. The trust agreement is in the nature of a security for the payment of the debt. It is primarily for the benefit and advantage of the bondholders, and may contain provisions for collateral security, provide for a sinking fund, give rights to convert bonds or debentures into stock of the company, restrict the right of the company to merge with another, and otherwise provide for the mutual and respective interests of the parties, collateral to the promises and agreements in the bond. An individual owner of a bond could ill afford to bear the expense incident to the enforcement of the obligation in case of default. A provision such as here considered must be treated as one for his benefit and to insure an orderly method of procedure for collection, thus avoiding the necessity of a multiplicity of separate actions. A purchaser of one of these bonds takes with notice that he thereby makes the trustee his agent to act for him in case of default. But it will not be assumed that the trustee so acting is limited by this reference from discharging the duty he owes to the bondholders to at all times protect their interests."

It is thus obvious that the so-called and improperly designated "no-action clause" of the debentures cannot affect their negotiability, since this sentence relates only to the remedy after default and after the debentures have ceased, in the full commercial sense, to be negotiable. To the same effect this court has held that a provision in a note for attorney's fees cannot affect its negotiability, "be-

cause the negotiability of a promissory note is for all practical purposes at an end when it matures." (*Dorsey* v. *Wolff*, 142 Ill. 589.) Likewise in *Stitzel* v. *Miller*, 250 Ill. 72, this court held that a provision in a promissory note providing, in effect, that if it were not paid at maturity the holder might extend it as he deemed proper, did not render the note non-negotiable, as its negotiability, for all practical purposes, ended when it became due. In the present case the vesting in the debentures of the right of action in the trustee was a remedy for collection after the debentures became due, and therefore after they ceased to be negotiable. Their negotiability was therefore unaffected.

It is further insisted by plaintiff in error that even if the bonds were negotiable the defendant in error was not a holder in due course, as it took them after maturity. The record contradicts this position, as it is shown that defendant in error did not take the debentures after maturity but after they were called for redemption, which is not the same thing. The debentures matured June 15, 1936, but were called for redemption on December 4, 1928, at the redemption price provided therein. This distinction between the maturity and redeemability of such instruments was pointed out in *Morgan* v. *United States*, 113 U. S. 476. Further, the Appellate Court has held that the defendant in error had no notice that these debentures had been called for redemption, there being no evidence of such notice in the record.

We have examined the other points made by plaintiff in error but do not find any of them of sufficient merit to warrant separate and extended treatment in this opinion.

The debentures in question were negotiable, and the judgment of the Appellate Court was correct and is therefore affirmed.

*Judgment affirmed.*