## GERRISH v. ATLANTIC ICE & COAL CO.
### No. 7879.

Circuit Court of Appeals, Fifth Circuit.
Dec. 19, 1935.

Clint W. Hager and J. W. Mason, both of Atlanta, Ga., for appellant.

Pope F. Brock and John A. Sibley, both of Atlanta, Ga., for appellee.

Before SIBLEY and WALKER, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

This is a suit for $20,000, with interest thereon at 6 per cent. per annum from July 1, 1929. The indebtedness is evidenced by 20 coupon, first mortgage bonds issued by the Atlantic Ice & Coal Corporation, now extinct, whose assets were taken over and liabilities assumed by the appellee, Atlantic Ice & Coal Company. The bonds were stolen, in a bank robbery, from the appellant (the owner), who had bought them for value and had taken title to them by delivery, without written assignment. Notice of the robbery was promptly given the appellee, but shortly thereafter each of said bonds was acquired by an innocent purchaser for value without notice; was presented for payment and cancellation to the Atlantic Ice & Coal Company; and was actually paid and canceled by said company. Originally filed as an action at law by the victim of the robbery, this suit was transferred to the equity docket without objection, and seeks to recover on the ground that the bonds were not negotiable instruments. It is contended that negotiability was destroyed by recitals in the bonds that they were executed and delivered in accordance with and subject to (and their payment secured by) a trust mortgage of even date, which is referred to and made a part thereof. Appellant insists that these provisions make the promise to pay conditional upon, and subordinate to, the trust instrument.

For accuracy and convenience, we quote at length certain pertinent portions of the bonds: "Know All Men By These Presents, that Atlantic Ice & Coal Corporation, a corporation organized under the laws of the State of Virginia, having its Home Office in the City of Richmond, said State, for value received, promises to pay to the bearer hereof, or if this bond is registered, to the registered holder thereof, the sum of One Thousand ($1,000.00) Dollars in gold coin of the United States of the present standard of weight and fineness, or its equivalent, at the office of the Trust Company of Georgia, in the City of Atlanta, State of Georgia, on the first day of January, 1930, with interest on said sum from the date hereof at the rate of six (6) per centum per annum, payable semi-annually and in like gold coin, on the first day of January and July in each year, at said office of said Trust Company of Georgia, or the Chase National Bank in New York City, according to the tenor and effect of the coupon hereto attached, and upon the presentation and surrender thereof respectively, and without deduction from either the principal or the interest for any tax which said Company may be required to pay or return therefrom by any present or future laws of the United States, or of the States of Virginia, Tennessee and Georgia: said Atlantic Ice & Coal Corporation hereby agreeing to assume the payment of all such taxes."

Immediately after the above-quoted unconditional promise to pay, follow these provisions:

"This bond is one of a series of Thirty-Five Hundred (3500) bonds, numbered from one (1) to thirty-five hundred (3500) inclusive, each of the sum of One Thousand ($1,000) Dollars, dated this day and maturing twenty (20) years from date and amounting in the aggregate to Three Million, Five Hundred Thousand Dollars ($3,500,000.00): all being of the same tenor and effect and executed and delivered in accordance with and subject to the provisions of the Trust Mortgage hereinafter referred to and in pursuance of resolutions of the stockholders and directors of said Atlantic Ice & Coal Corporation, authorizing the issuance and execution of said bonds and coupons and the execution and delivery of said Trust Mortgage.

"The payment of this bond and of the coupons attached to it, is secured by a Trust Mortgage of even date herewith, which is hereby referred to and all of its provisions made a part hereof, covering all of the real property, improvements thereon, machinery, equipment, rights, franchises and other property (except raw material and manufactured product and choses in action) now owned and afterwards acquired by said Atlantic Ice & Coal Corporation and used by it in connection with the business conducted by it under the terms of its charter, which mortgage has been duly executed and delivered by it to said Trust Company of Georgia, as Trustee."

These bonds were issued in Georgia in 1910. The principal is payable there, at the office of the Trust Company of Georgia, in the city of Atlanta. The interest is payable at the same place, or the Chase National Bank in New York City, according to the tenor and effect of attached coupons. There is nothing further in the record or briefs about the tenor and effect of the coupons, but it is contended by appellant, and tacitly conceded by appellee, that the Georgia law controls because the contract was made in Georgia and was to be performed there, at least as to payment of principal. Appellant further contends that section 4270, Park's Georgia Code, was in force in 1910, and is applicable. This section merely defines a promissory note, and the definition therein contained does not differ materially from the common-law idea, except in respect to matters not here in issue. Appellee insists that there is nothing in said section 4270, and no Georgia decision, which will aid us in determining the controverted issue as to negotiability, and that, upon that issue, these bonds are to be tested by the general law of negotiable instruments as it would have been applied by the federal courts in Georgia prior to the adoption of the subsequently enacted Uniform Negotiable Instruments Act, adopted August 18, 1924 (Georgia Laws of 1924, p. 126). There is no contention that this act should have a retroactive operation. Both sides cite freely from the decisions of other states to sustain the positions respectively taken by them, but we agree with appellee that, since there is no Georgia statute or decision applicable to this controversy, it should be determined by the principles of law as announced in the federal decisions.

The federal courts will follow local decisions construing state statutes upon negotiable instruments, even though such statutes be merely declaratory of the rule at common law (Burns Mortg. Co. v. Fried, 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380, 92 A.L.R. 1193), but they will follow their own construction of the law merchant without reference to the decisions of a state which has not adopted a Negotiable Instruments Act. When the bonds in suit were issued and sold, the law merchant was the rule of construction in Georgia upon the pivotal question now presented. In these circumstances, this court will determine for itself what is the proper test of their negotiability. Bank of Saginaw v. Title & Trust Co. of Western Pennsylvania (C.C.) 105 F. 491, 492; Mercer County v. Hackett, 1 Wall. 83, 96, 17 L.Ed. 548; 6 Hughes Federal Practice, § 3765.

The general principles applicable to the issues here presented have been announced in a number of federal decisions. Bonds payable to bearer or, if registered, to the registered holder thereof, and declared to be due on or before a certain date, are negotiable, though redeemable by installments determined by annual drawings. Dickerman v. Northern Trust Co., 176 U.S. 181, 20 S.Ct. 311, 44 L.Ed. 423. See, also, Burke v. American Loan & Trust Co., 155 U.S. 534, 15 S.Ct. 214, 39 L.Ed. 251. The courts seek to discover the intention of the parties as to the negotiability of industrial bonds, not only from the formal words written into them, but, if the language is ambiguous, from the practical manner in which the parties have dealt with them. White v. Vermont & Mass. R. R. Co., 21 How. 575, 577, 16 L.Ed. 221; Cudahy Packing Co. v. State National Bank of St. Louis (C.C.A.) 134 F. 538. Negotiability is not affected by references in a bond or note to an extrinsic instrument which relate merely to the security and do not limit, qualify, or render uncertain the unconditional promise of the maker to pay the holder a certain sum at a certain time and place; and, of course, that is certain which may be rendered certain. Chavelle v. Washington Trust Co. (C.C.A.) 226 F. 400; Pittsburg, C., C. & St. L. Railway v. Loan & Trust Co., 172 U.S. 493, 19 S.Ct. 238, 43 L.Ed. 528; Fidelity Trust Co. v. Mayhugh (C.C.A.) 268 F. 712. The certainty required is commercial certainty, not mathematical; neither does a provision for the payment of attorney's fees, in case a note is not paid at maturity, destroy its negotiability if it is otherwise negotiable. Cudahy Packing Co. v. State Nat. Bank (C.C.A.) 134 F. 538. Unless the reference indicates that payment of the bond is to be burdened with the provisions or conditions of the extrinsic agreement, negotiability is not impaired. 3 R.C. L. pp. 918, 112. A recent case, strongly persuasive, is Marine National Exchange Bank v. Kalt-Zimmers Mfg. Co., 293 U.S. 357, 55 S.Ct. 226, 79 L.Ed. 427. We say persuasive, because in that case, on the issue of negotiability, the

federal Supreme Court followed state decisions in the construction of a state statute. The bonds were payable to bearer. They contained a statement that they were secured by a deed of trust, to which reference was made with the same effect as though recited at length therein "for the description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the said bonds are issued, held, and secured, and may, before their fixed maturities, be declared at once due and payable, and the manner of prepayment before maturity." There was also a recital that the bonds were to pass by delivery, but were not to be valid for any purpose or be secured by the deed of trust until certified by the trustee to be covered by the mortgage. In its opinion the court said, 293 U.S. 357, page 362, 55 S.Ct. 226, 228, 79 L.Ed. 427: "The bonds in controversy are payable to bearer. They are obviously negotiable, unless the reference, already quoted, to the terms of the deed of trust makes the promise of payment conditional. An identical provision was considered by the Supreme Court of Wisconsin in Pollard v. Tobin, 211 Wis. 405, 247 N.W. 453, 456. The ruling of the court was that negotiability was not impaired. Cf. Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45; Siebenhauer v. Bank of California Nat. Asso., 211 Cal. 239, 294 P. 1062; Pflueger v. Broadway Trust & Sav. Bank, 351 Ill. 170, 184 N.E. 318; Paepcke v. Paine, 253 Mich. 636, 235 N.W. 871, 75 A.L.R. 1205; Merchants' Nat. Bank v. Detroit Trust Co., 258 Mich. 526, 242 N.W. 739, 85 A.L.R. 350; Bank of California v. National City Co., 138 Wash. 517, 244 P. 690. This construction of a Wisconsin statute is binding upon the national courts, though the statute may have been intended to be declaratory of the rule at common law. Burns Mortg. Co. v. Fried, 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380, 92 A.L.R. 1193."

In the case before us, there is no contention that any language either in the bonds or trust mortgage limits, qualifies, or renders uncertain by its own force the unconditional promise to pay, without deduction for any tax, the face amount of the bonds, when due, upon presentation and surrender thereof. The real contention of appellants is that the mere incorporation in the bond, by reference, of the mortgage, as security, in and of itself destroys negotiability. The language of the bond upon which this contention is based is, that "this bond * * * is executed and delivered in accordance with and subject to the provisions of the Trust Mortgage hereinafter referred to and in pursuance of resolutions of the stockholders and directors of said Atlantic Ice & Coal Corporation, authorizing the issuance and execution of said Trust Mortgage"; and "the payment of this bond and of the coupons attached to it, is secured by a Trust Mortgage of even date herewith, which is hereby referred to and all of its provisions made a part hereof, etc."

It is apparent that the first above-quoted clause is a mere recital of the manner and circumstances in which the bonds were executed and delivered, and the authority for so doing. The second discloses the nature of the instrument which secures the payment of the bonds and coupons, and describes in a general way the property embraced in the trust, as "all of the real property, improvements thereon, machinery, equipment, rights, franchises, and other property (except raw material and manufactured product and choses in action) now owned and afterwards acquired by said Atlantic Ice & Coal Corporation and used by it in connection with the business conducted by it under the terms of its charter, which mortgage has been duly executed and delivered by it to said Trust Company of Georgia as trustee."

There is nothing in the just-quoted provisions which restricts, or burdens with conditions, the absolute promise to pay the amount named in the bond, when due, to the bearer thereof upon its presentation and surrender. The plaintiff in this case acquired title to the bonds sued on by delivery. In purchasing them he dealt with them as instruments that passed by delivery. The fact that a bond is secured, or that the security is referred to or incorporated therein, is immaterial on the issue of negotiability. The real issue is whether the reference to an extrinsic document restricts or circumscribes the promise to pay. We think, under a proper construction, the bonds in the case at bar are unlimited and unconditional promises to pay to bearer a certain sum at a certain time and place, and are negotiable instruments. The decree of the court below is affirmed.