**UNITED STATES of America**

v.

**Phillips FARRINGTON.**

**Civ. A. No. 57-967.**

United States District Court
D. Massachusetts.
April 13, 1959.

Anthony Julian, U. S. Atty., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for plaintiff.

W. Langdon Powers, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action for the balance due on two promissory notes [1] of which the maker, Davis Aircraft Engineering, Inc., is in bankruptcy and substantially in default. The transactions were entered into in Massachusetts. Most of the facts were stipulated, and I find in accordance with the stipulation. Certain oral evidence was offered, which I will deal with subsequently. The payee was a bank. On the face of each note, which was on a printed form, appeared the following, the italicized portions being in ink and inserted between the printing, in lined, blank spaces provided therefor:

"* * * having deposited with this obligation as Collateral Security, * * *

*Assigned Government Contracts*
*This note evidences a borrowing made under and is subject to the terms of loan agreement dated Jan. 3, 1952 between the undersigned and the payee thereof* and should the market value of the same, in the judgment of the holder or holders hereof, decline, *we* promise to furnish satisfactory additional collateral on demand * * *."

On the back of the notes, over their typed names but without any other writing, are the signatures of Davis, one Atkinson, and the defendant. By restrictive endorsements of the payee, under these signatures, the notes became payable to the plaintiff, a holder for value.

The loan agreement established a revolving credit arrangement for the benefit of Davis Aircraft. It also contained a number of protective provisions and recited the borrower's various obligations with respect to security, one of the paragraphs being the following:

"V., 3. All borrowings under this credit are to be personally endorsed or guaranteed by Daniel E. Davis, Donald T. Atkinson and Phillips Farrington."

Davis and Atkinson, but not Farrington, signed this agreement on behalf of the company. Reference was made in the loan agreement to a "Guarantee Agreement" between the bank and the Department of the Army, "annexed hereto and made a part hereof * * *." This agreement on its first page contained the following typewritten words as part of a description of "the terms and conditions"

---

1. They are dated April 18, and May 15, 1952, and, except as about to be mentioned, for purposes of this opinion are identical. The first note is for the amount of $600,000, and the second for $171,791.87, both with interest. Both state that they are payable "on demand, after date," and the parties in their stipulation treat both as demand notes.

They have attached no significance to the filling in, after the printed word "Due" at the bottom corner of the first note, the words "July 18, Oct. 18, Jan. 18, April 18." If I were holding this note to be negotiable it seems to me to be something that would have to be dealt with.

of the loan being guaranteed: "The loan shall be personally endorsed or guaranteed by Daniel E. Davis, Donald T. Atkinson and Phillips Farrington."

There is no evidence that either the payee or the plaintiff had any notice of any infirmity in the instruments, and with the exception of the oral evidence about to be referred to there is no claim of infirmity. The defendant testified that in 1950 he was a young man just out of college, with some inherited money, but no experience; that he obtained employment with Davis Aircraft Engineering, Inc., and was "given an opportunity," of which he availed himself, of acquiring most of the preferred stock of the company; that all the common stock was held equally by Davis and Atkinson; that beginning in January, 1952 he was put in charge of personnel, and at or about this time heard talk that the company was obtaining substantial loans in connection with some government contracts; that through the winter and spring of 1952 Davis presented to him a series of promissory notes, of which those in suit are two, and asked him to sign on the back thereof, which in each instance he did; that at the time Davis made the first request, which apparently did not involve either of the notes being sued upon, he asked Davis why his signature was wanted; and was told that it was in connection with a loan and the only reason for signing was that the payee bank wanted assurance that the stockholders of the company knew "what was transpiring"; that nothing was ever stated with relation to his incurring obligations as a result of his signature, and that he did not intend to incur any. With respect to the recitation in the loan agreement which would have contradicted what Davis allegedly told defendant, the defendant stated that he never saw the loan agreement or the

guarantee agreement, and had no knowledge of what was in them.

While it is difficult to credit such a state of business naivete, the circumstances of the defendant's original investment in this company tend to confirm it, and I accept his story. The plaintiff had a chance to ask Davis to deny its accuracy and did not do so. Also, the fact that Davis and Atkinson signed these instruments themselves, and their size, would have tended to corroborate Davis' explanation. It is perhaps easier to think that the defendant believed what Davis is said to have told him than to believe that he intentionally incurred these additional obligations, very many times greater than his original investment.

█ If these notes were negotiable there is no defense; the defendant is liable as an endorser. Mass.G.L. c. 107, §§ 39(6), 52, 86, 87.[2] He contends that they were not negotiable because making the obligation subject to the terms of the loan agreement caused it to lack "certainty." Mass.G.L. c. 107, § 23(2),* provides that for an instrument to be negotiable it "Must * * * contain an unconditional promise or order to pay a sum certain in money." Defendant does not and cannot point to anything in the loan agreement which would have, in fact, imposed any contingency upon the obligation had the terms of the loan agreement been included on the face of the note itself. Cf. City Nat. Bank v. Adams, 266 Mass. 239, 165 N.E. 470. His position is that as a matter of law an instrument is conditional if it incorporates by reference a separate document making it impossible to know whether the obligation is certain or not until that document is examined. The Massachusetts cases upon which defendant relies, with the possible exception of Costelo v. Crowell, 127 Mass. 293, all in-

2. All the provisions of the Negotiable Instruments Law cited in this opinion have been repealed, effective October 1, 1958, by the enactment of the Uniform Commercial Code, Acts 1957, c. 765, §§ 2, 21, M.G.L.A. c. 106 following section 9–507; c. 106 § 1–101 et seq., 3–402, 3–415. They of course remain applicable as the law of this case.

* Now M.G.L.A. c. 106, § 3–104(1).

volved separate agreements that in fact imposed contingencies when read into the instrument. Whether the instrument becomes non-negotiable because on its face it is subject to an agreement which may impose contingencies even though in actual fact it does not, is quite a different matter, leading to policy questions of large compass. Although this precise question is often left undiscussed by the cases, see National Bank of Newbury v. Wentworth, 218 Mass. 30, 105 N.E. 626, there is a considerable body of authority to the effect that if the instrument contains the phrase, "subject to" the terms of another document, or words to that effect, the reference is fatal to negotiability regardless of the actual provisions of the other document. See, e. g., Enoch v. Brandon, 249 N.Y. 263, 267, 164 N.E. 45, 47; Davis v. Union Planters Nat. Bank & Trust Co., 171 Tenn. 383, 103 S.W.2d 579; Annotation, 104 A.L.R. 1378, 1379; Aigler, Conditions in Bills and Notes, 26 Mich.L.Rev. 471, 487, 490–491 & nn. 69 & 71 (1928).[3]

This principle has apparently been modified in some jurisdictions, particularly with regard to corporate bonds, to the extent of permitting the incorporation of terms of a mortgage or deed of trust designed to secure the obligation of the primary instrument. In such cases it is said that making the note or bond subject to the provisions of what is clearly an agreement regarding collateral security in no way "restricts, or burdens with conditions, the absolute promise to pay" contained in the instrument. Gerrish v. Atlantic Ice & Coal Co., 5 Cir., 80 F.2d 648, 651. See also, e. g., Enoch v. Brandon, supra; Sturgis Nat. Bank v. Harris Trust & Savings Bank, 351 Ill. 465, 184 N.E. 589. But see Brannan, Negotiable Instruments Law 256–259 (7th Ed., Beutel 1948), critcizing many of the cases upholding negotiability and stating that the "cases on the point are

now in hopeless confusion." Id. at 257. See also the Uniform Commercial Code, Mass.G.L. c. 106, comparing § 3–105(1) (e) with § 3–105(2) (a), and Massachusetts Commercial Code and Uniform Commercial Code Comments thereon.

In the case at bar it could be argued from the placement of the handwritten words that the note was described as subject to the loan agreement for the purpose of indicating the circumstances under which it was executed, and setting forth more fully the undertaking with respect to collateral security, and not in order to limit the promise to pay. However, I believe this is not the only and necessary interpretation, and that the ambiguity can be resolved only by examination of the loan agreement. It is true that inspection of this agreement will resolve the ambiguity in favor of the plaintiff, but I rule that that is not enough to make the instrument negotiable.

 If the instrument is not negotiable because of the reference to the loan agreement, neither is it a promissory note within the meaning of the law merchant. Therefore the defendant cannot be held liable as a co-maker under a line of Massachusetts cases antedating the Negotiable Instruments Law. See Gloucester Mutual Fishing Ins. Co. v. Boyer, 294 Mass. 35, 38, 200 N.E. 557. But under the Boyer case he will be liable as a guarantor of the corporation's promise. Whether the problem be looked at as a question of compliance with the Statute of Frauds, Mass.G.L. c. 259, § 1, Second, or as a question of contract interpretation, the basic question is whether the defendant in fact or in law entered into an agreement of guarantee. If there are words in the documents which so indicate, and if the defendant placed his signature upon those documents in a manner which would indicate his intent so to bind himself, he will be held to

---

3. Such would also seem to be the meaning of the Uniform Commercial Code, Mass. G.L. c. 106, § 3–105(2) (a). See Massachusetts Commercial Code Comment (appearing in M.G.L.A.) and particularly the Uniform Comercial Code Comment No. 8, stating that "an instrument is not negotiable unless the holder can ascertain all of its essential terms from its face."

the objective meaning of the contract he has made, his private intent being immaterial, and evidence of it inadmissible. Equitable Marine Ins. Co. v. Adams, 173 Mass. 436, 53 N.E. 883. In the Boyer case, the court implied words of guarantee because "the signers had nothing to assign, the words of waiver preceding the signatures [4] showed an intent to assume some liability, and the signatures are meaningless unless expressive of a guaranty of the performance of the contract." 294 Mass. at page 40, 200 N.E. at page 561. In the case at bar there is not even a need to resort to presumption or implication since the "note" incorporates by reference the loan agreement, which in turn incorporates the government's guarantee agreement, in both of which it is set forth that the defendant was to endorse or guarantee any borrowing.[5] By this incorporation the defendant either authorized the insertion of words of guarantee directly over his signature, or else is to be deemed to have assented to the loan agreement itself. There is compliance with the Statute of Frauds since the unsigned document is incorporated into one which is signed by the defendant. 2 Williston, Contracts § 581 (Rev.Ed.1936). The consideration for the guarantee, which need not be expressed in writing, Mass.G.L. c. 259, § 2, was sufficiently proved by showing the defendant's stock interest in the corporate maker, and the payee's known reliance upon the defendant's signature.

See Rome v. Gaunt, 246 Mass. 82, 94, 140 N.E. 242.

It is not open to the defendant to claim that he was defrauded by Davis. As against an innocent third party, either the payee or the plaintiff, he must be ruled to have acted too negligently to permit him to use such fraud as a shield. The defendant admitted that he knew that loans to the Company were being arranged, that he "probably did know" that the instruments he was signing were notes, and that he was being asked to indicate his knowledge as a stockholder of "what was transpiring." He must be charged with knowledge that his signature had all the appearance of being an endorsement or subjecting him to liability in some manner, or at the least was capable of being so construed. See 1 Williston, Contracts § 35 (3d Ed. 1957); 5 Id. §§ 1488, 1577 (Rev.Ed. 1937). It would be expected for the bank to assume a knowledge of the loan agreement on his part as it was an integrated part of the transaction with which he understood the bank wanted him to be acquainted. Since at the least the loan agreement resolves an ambiguity for which defendant must be charged, I rule under the circumstances that he is liable on the instrument even though it is not negotiable.

The amounts due have been stipulated.

Judgment is ordered for plaintiff in the amount of $350,683.35.

4. The signatures in the Boyer case were of the three major shareholders of the corporation which was the maker of the "note." The signatures appeared on the back of the "note," under the phrase, "Waiving demand and notice," followed by the date. In the present case, the last sentence in the body of the "note" is: "Each and every party to this instrument either as maker, endorser, or otherwise, hereby waives presentment for payment, notice of dishonor, protest and notice of protest, thereof."

5. The defendant has argued that because the note refers only to the original loan agreement of Jan. 3, 1952, and not to a supplement of Jan. 29, 1952, whereby the amount of credit permitted to be outstanding at a given time was increased to $600,000 from the $300,000 referred to in the original agreement, the defendant's guarantee extended only to the first $300,000 of credit, which was repaid by the corporation. This argument totally misconstrues the nature of a revolving credit arrangement. Furthermore, the April 18 note is itself for $600,000, on its face, and it is hardly open to him to say he is limited by the loan agreement to $300,000 without at the same time accepting the burden of the rest of that agreement. It is to be noted that the principal amount now due is less than $300,000.