24 B.R. 804 (1982)
In re Barbara R. LEVINE, Debtor.
LINCOLN FIRST BANK, N.A. Plaintiff,
v.
BANK OF NEW YORK, Bankers Trust Co., David & Joan Mykoff, Citytrust Manufacturers Hanover Trust Co., Jeffrey Sapir and Barbara Levine, Defendants.
Bankruptcy No. 81 B 20459, Adv. No. 82 Adv. 6085.
United States Bankruptcy Court, S.D. New York.
November 23, 1982.
*805 Farrauto, Berman & Fontana, Yonkers, N.Y., for Lincoln First Bank, N.A.
Mario Giovannelli, Tarrytown, N.Y., for Bank of New York.
Winick & Rich, P.C., New York City, for Citytrust.
Michael H. Ganz, Woodbury, N.Y., for Manufacturers Hanover Trust Co.
Charles Leeds, New York City, for Bankers Trust Co.
DECISION ON ASSIGNEE'S MOTION TO REARGUE DECISION DECLARING MORTGAGE NON-NEGOTIABLE
HOWARD SCHWARTZBERG, Bankruptcy Judge.
Negotiable or non-negotiable, that is the question now raised by Bankers Trust Company in its motion to reargue this court's earlier ruling, dated September 30, 1982, 23 B.R. 410, that the debtor's mortgage bond was not negotiable. Lincoln First Bank, N.A., as plaintiff and the holder of a judgment lien against the debtor, commenced an adversary proceeding in this Chapter 13 case, contesting the validity and priority of various liens which allegedly encumbered the debtor's real estate, and questioning the status of Bankers Trust Company under a mortgage bond executed by the debtor and her husband in favor of certain relatives. the debtor's relatives had hypothecated the bond to Bankers Trust Co. in exchange for the latter's forbearance from enforcing two promissory notes against the debtors.
Lincoln First argued that the debtor's relatives did not give any consideration for the mortgage bond because their previous advances to the debtor and her husband were intended as gifts. Alternatively, Lincoln First argued that no new funds were advanced by the relatives to support the mortgage bond and that the consideration at most was past consideration. This court found that the previous advances by the relatives to the debtor and her husband were not gifts and that the mortgage bond was given for an antecedent debt. However, this court ruled that the language in the mortgage bond merely reflected an obligation to pay the mortgagee and did not refer to or express the past consideration given. Therefore, the mortgage bond was unenforceable because it failed to satisfy *806 the requirement of Section 5-1105 of the New York General Obligations Law, that past consideration must be expressed in the writing.
However, this court pointed out that if the mortgage bond in question were a negotiable instrument, the lack of legal consideration supporting it would not affect Bankers Trust's secured status as assignee of the mortgage because New York's Uniform Commercial Code (U.C.C.) § 3-408 states that lack of consideration for an antecedent debt is no defense to an action on an instrument. The term "instrument" is defined in N.Y.U.C.C. § 3-102(1)(e) as referring to a negotiable instrument. Thus, if the mortgage bond were negotiable, N.Y.U.C.C. § 3-408 would resolve any problems regarding the consideration. Having raised the issue of negotiability on its own, the court then concluded that the mortgage bond was not a negotiable instrument in form, quoting from Enoch v. Brandon, 249 N.Y. 263, 265-6, 164 N.E. 45, 46 (1928) where that court said in relevant part:
"The statute deals with the form of the instrument  with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum, on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it negotiable."
Bankers Trust now claims that the debtor's mortgage bond is a negotiable instrument, and that even if it is technically not a negotiable instrument, Article 3 of the New York U.C.C. still applies because it is made applicable by § 3-805.

IS U.C.C. ARTICLE 3 APPLICABLE?
By its express terms N.Y.U.C.C. § 3-805 makes Article 3 applicable to non-negotiable instruments under specific circumstances as follows:
"§ 3-805. Instruments Not Payable to Order or to Bearer
This Article applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this Article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument."
The sine qua non under § 3-805 is that the instrument is not payable to order or to bearer; except for which omission the instrument must meet all other requirements under N.Y.U.C.C. § 3-104(1) as to the form for negotiable instruments. The official Comment following § 3-805 explains this point as follows:
"In short, the `non-negotiable instrument' is treated as a negotiable instrument, so far as its form permits. Since it lacks words of negotiability there can be no holder in due course of such instruments, and any provision of any section of this Article peculiar to a holder in due course cannot apply to it. With this exception, such instruments are covered by all sections of this Article." [Emphasis added]
Thus, the endorser of an instrument that is not payable to order or to bearer is accorded the same treatment as an endorser of a negotiable instrument; the endorser is entitled to presentment, notice of dishonor and protest, and the procedure and liabilities in bank collection are the same. The rules as to alteration, the filing of blanks, accommodation parties, the liability of signing agents, discharge, and the like are the same as those applied to negotiable instruments. See Official Comment following § 3-805.
Bankers Trust's reliance upon § 3-805 is misplaced because they also say that the mortgage bond is payable to order, and therefore negotiable. If the mortgage bond is payable to order, as Bankers Trust maintains, then there is no need to look to § 3-805 for salvation, although it does not necessarily follow that the instrument will be negotiable unless it meets all of the other requirements for negotiability delineated under § 3-104(1).
The mortgage note does not expressly say that it is payable to the order of the obligee. Instead it says that the "obligor does hereby covenant to pay to the said obligee, and the executors, administrators, successors or assigns of the obligee. . . ." [Emphasis added]
*807 In the case of In re Deveson's Estate, 158 Misc. 868, 287 N.Y.S. 98 (Surr.Ct.1936), the court held a mortgage bond to be non-negotiable when it was payable to the obligee, his executors, administrators, or assigns. The court reasoned that the failure to make the mortgage bond payable to the order of the obligee was fatal to negotiability. However, this point is now covered under N.Y.U.C.C. § 3-110(1), which defines "payable to the order" to include an instrument that is payable to the "assigns" of the obligee. Section 3-110(1) reads in relevant part as follows:
"§ 3-110. Payable to Order
(1) An instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty, or to him or his order, or when it is conspicuously designated on its face as "exchange" or the like and names a payee. [Emphasis added]
The reference to "assigns" recognized the concept of transferability attributable to a negotiable instrument and is consistent with language in Brainerd v. New York and Harlem Railroad Company, 25 N.Y. 496 at 500 (1862):
"But when such obligations are issued to secure the payment of money upon time, and contain on their face an expression showing that they are expected to pass from one person to another, and thus to perform the office of bills and notes or of money, as the words `bearer,' or `assigns,' or `the holder,' or the like, the courts of this country, with a single exception, and those of this State, without any exception, have concurred in attaching to them the attributes of commercial paper." [Emphasis added]
Consequently, the mortgage bond in question meets the "payable to order" test under § 3-110(1), so that § 3-805, which refers only to instruments not payable to order or to bearer, will not apply. Therefore, if the mortgage bond does not meet all of the remaining standards for negotiability, as prescribed under § 3-104(1), Bankers Trust will not be able to draw upon § 3-805 for the purpose of treating the instrument in the context of Article 3 of the N.Y.U.C.C.

THE INSTRUMENT MUST BE FACIALLY NEGOTIABLE
That the printed mortgage bond is commonly used in real estate transactions and is generally available in most legal stationery stores does not mean that it is negotiable. Indeed, bonds and mortgages are not generally transferred by endorsement and delivery since most title companies would insist upon an assignment of the mortgage and bond obligations. Notwithstanding such general commercial practice, there is no reason why a mortgage bond may not also be a negotiable instrument if it meets the requirements for negotiability.
The problem with the printed form that the debtor executed in this case is that it contains a clause incorporating the covenants and conditions of the mortgage that secured the mortgage bond, thereby possibly conditioning the promise to pay in accordance with the terms and conditions of an extrinsic document. This clause reads as follows:
"IT IS HEREBY EXPRESSLY AGREED, that the said principal sum shall at the option of the obligee become due on the happening of any default or event by which, under the terms of the mortgage securing this bond, said principal sum may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in said mortgage are hereby made part of this instrument." [Emphasis added]
It is settled law that a provision in a note to the effect that it is subject to the terms of another agreement not attached to the note makes the promise of payment one that is not absolute on its face and destroys negotiability. Old Colony Trust Co. v. Stumpel, 247 N.Y. 538, 161 N.E. 173 (1928). However, it was early held that the mere reference to a separate mortgage agreement does not by itself impede the negotiability of a mortgage bond. Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45 (1928). In that case certain coupon bonds contained a *808 promise to pay the bearer at a certain time. The bonds stated that they were "all equally secured by and entitled to the benefits and subject to the provisions" of the trust mortgage. The bonds bore provisions for redemption and acceleration and referred to the trust mortgage "for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner which notice may be given to such holders and the terms and conditions under which said bonds are issued and secured," 249 N.Y. at 266, 164 N.E. at 47. Certain of the bonds were stolen from the plaintiff and negotiated before maturity to the defendant, a bona fide purchaser for value. In a suit for the bonds or their value, judgment for the defendant in the trial court was affirmed by the New York Court of Appeals, reversing the Appellate Division ruling. The Court of Appeals held the bonds to be negotiable under Section 1 of the Negotiable Instruments Law to which any instrument then had to conform to be negotiable; the reference on the bonds to the trust mortgage was regarded as relating only to the security and not as rendering the promise to pay conditional.
The court explained that the bond clauses dealing with the rights conferred on the bond holders and references to the conditions under which the bonds were issued and secured were all linked together in a context that would clearly indicate that these provisions related solely to the security, and made no modification of the unconditional promise to pay.
Although the bonds also stated that they were "subject to the provisions" of the trust mortgage, the Enoch court did not interpret that phrase as a threat to the unconditional character of the promise to pay and opined that no purchaser of the bonds would believe upon reading such a phrase that there was something contained in the mortgage that would interfere with the absolute right to payment. The court reasoned that the meaning of this clause was that any foreclosure or other relief available under the mortgage would be subject to its provisions and that by examining the mortgage the bond purchaser would discover the exact nature of his lien. The court distinguished the result in Old Colony v. Stumpel, supra, where a note stated that it was "subject to the terms" of a conditional sales agreement, and was found to contain a conditional promise to pay, which was fatal to negotiability.
The Enoch court pointed out that in Old Colony there was no possibility that the "subject to" clause related only to the security; since the note was "subject to the terms" of a conditional sales agreement, the note's payment terms would necessarily be burdened by extrinsic payment provisions contained in the sales agreement. The Enoch court observed that:
"If in the bond or note anything appears requiring reference to another document to determine whether in fact the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional." 249 N.Y. at 267, 164 N.E. at 47.
Thus, the Enoch v. Brandon decision stands for the proposition that "making a note or bond subject to the provisions of what is clearly an agreement regarding collateral security in no way `restricts, or burdens with conditions, the absolute promise to pay' contained in the instrument", United States v. Farrington, 172 F.Supp. 797, 800 (D.C.Mass.1959) quoting Gerrish v. Atlantic Ice & Coal Co., 80 F.2d 648, 651 (5th Cir. 1935). The specific and limited references to the mortgage are for the information of the purchaser concerning his foreclosure and other related rights under the mortgage, and not considered to be terms that threaten the unconditional right to payment.
The requirement for negotiability that the written instrument must contain an unconditional promise or order to pay is now expressed in paragraph (b) of New York U.C.C. § 3-104(1), which reads as follows:
"3-104. Form of Negotiable Instruments; "Draft"; "Check"; "Certificate of Deposit"; "Note"

*809 (1) Any writing to be a negotiable instrument within this Article must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or to bearer. [Emphasis added]
The problems arising in such cases as Enoch v. Brandon, supra, involving a reference to a mortgage, were settled by statute in favor of negotiability. Accordingly, New York U.C.C. § 3-105 provides in relevant part as follows:
"§ 3-105. When Promise or Order Unconditional
(1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument
. . . . .
(c) refers to or states that it arises out of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration;
However, if the language in the instrument goes beyond merely refering to a separate mortgage agreement, and states that the instrument is "subject to" or "governed by" another agreement, then such incorporation by reference is not excused from impairing negotiability, and may therefore be treated as conditioning the promise to pay. This treatment results from the language in New York U.C.C. § 3-105(2)(a) which says that such a promise is not unconditional, and states that:
"(2) A promise or order is not unconditional if the instrument
(a) states that it is subject to or governed by any other agreement."
The distinction between a reference in a bond or note to a separate agreement and a recital that it is "subject to" or "governed by" any other agreement is explained in the Official Comment following N.Y.U.C.C. § 3-105 as follows:
"8. Paragraph (a) of subsection (2) retains the generally accepted rule that where an instrument contains such language as "subject to terms of contract between maker and payee of this date," its payment is conditioned according to the terms of the agreement and the instrument is not negotiable. The distinction is between a mere recital of the existence of the separate agreement or a reference to it for information, which under paragraph (c) of subsection (1) will not affect negotiability, and any language which, fairly construed, requires the holder to look to the other agreement for the terms of payment. The intent of the provision is that an instrument is not negotiable unless the holder can ascertain all of its essential terms from its face. In the specific instance of rights as to prepayment or acceleration, however, there may be a reference to a separate agreement without destroying negotiability." [Emphasis added]
In light of the foregoing authorities, this court must decide whether or not the incorporation in the mortgage bond of the covenants and conditions contained in the separate mortgage agreement is regarded under N.Y.U.C.C. § 3-105 as impairing the unconditional promise to pay that is required under N.Y.U.C.C. § 3-104(1).

INCORPORATING CONDITIONS OF AN EXTRINSIC DOCUMENT
In a strikingly similar case, King Cattle v. Joseph, 158 Minn, 481, 198 N.W. 798 (1924) aff'd on reargument, 199 N.W. 437 (1924), the court was presented with the issue of determining the negotiability of certain bonds which contained the following language:
"All of which bonds have been issued, or are to be issued under and in pursuance of, and are all equally secured by, and are subject to an indenture of mortgage or deed of trust . . . and hereby reference is made to said indenture and the same made a part hereof, with the same effect as if herein fully set forth." 198 N.W. at 799. [Emphasis added].
*810 The court found that the bonds were not negotiable, since the deed was expressly made a part of the bonds, "as though its contents were repeated in them." Id.
After agreeing to hear reargument, during which the court conducted a more extended discussion of the issues, and for which the court entertained the submission of additional briefs, the court reiterated the concept that although a reference in a bond or note to an extrinsic agreement does not destroy the bond's negotiability, "if the reference is of such a nature as to subject the paper to the terms of the extrinsic agreement and to impress them upon it, its negotiability is destroyed." 199 N.W. at 437. The court adhered to its original decision and reasoned that the language in the bonds went far beyond a mere reference to the underlying collateral:
"The parties evidently intended to incorporate and include the provisions of the trust deed in the bonds. They wrote into them a notice to an intending purchaser that, in determining the nature of the obligation of the maker, he could not stop with a reading of the bonds, but must also read the trust deed, for the conditions of the trust deed were impressed upon them. In one sense the bonds were incomplete, not because there were unfilled blanks or omissions to be supplied, for there were none, but because on their face the bonds carried notice that the entire contract of the parties was not expressed. It was necessary to look to a separate instrument to be certain as to when and how the maker of the bonds could be compelled to pay them. For these reasons we adhere to the former ruling that the bonds are not negotiable." Id. at 438.
The wholesale incorporation into a bond of the terms of an extrinsic agreement, such as a mortgage agreement, seems even more extreme than words to the effect that the bond is "subject to" or "governed by" the separate agreement. As discussed earlier in connection with Enoch v. Brandon, supra, the bonds in that case made specific references to a mortgage for certain specific informational purposes: for a description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, manner of notice and terms and conditions under which the bonds were issued and secured. Since these stated purposes did not condition the promise to pay, the court sustained the bonds' negotiability.
However, the unlimited incorporation by reference of all of the terms of a document is an entirely different matter. The court in Merchants' Nat. Bank v. Detroit Trust Co., 258 Mich. 526, 242 N.W. 739 (1932), a case decided under New York law, recognized this distinction in passing on the negotiability of several bonds. The court repeatedly invoked the ruling of Enoch v. Brandon, supra, concluding that nearly all of the bonds in question were negotiable since they merely referred the purchaser to the extrinsic mortgage agreements for the same specific informational purposes as those delineated in Enoch.
However, when confronted with a bond which recited that it was subject to and bound by all the provisions in the mortgage "the same as though all of said provisions were herein expressly set forth . . .", the court firmly stated:
"The negotiability of this bond cannot be determined by its face. It incorporates by reference all of the provisions of the mortgage. Under all decisions of the court it is not negotiable." 242 N.W. at 740. [Emphasis added].
In Booker v. Everhart, 294 N.C. 146, 240 S.E.2d 360 (1978), a case involving a note which incorporated by reference a Deed of Separation and Property Settlement immediately following the promise to pay a sum certain, the court held that because the note became subject to "any and all possible conditions contained in those prior documents," 240 S.E.2d at 363, the promise to pay became a conditional one, and the note non-negotiable.
Similarly, in Holly Hill Acres, Ltd. v. Charter Bank of Gainesville, 314 So.2d 209 (Fla.1975), the court held that a promissory note which incorporated by reference the *811 terms of a mortgage securing it was not negotiable, since it did not contain an unconditional promise to pay. The note contained the following language: "the terms of said mortgage are by this reference made a part hereof." The court explained that this clause was no mere reference to the mortgage agreement to which the note related:
"There is, however, a significant difference in a note stating that it is `secured by a mortgage' from one which provides, `the terms of said mortgage are by this reference made a part hereof.' In the former instance the note merely refers to a separate agreement which does not impede its negotiability, while in the latter instance the note is rendered non-negotiable." 314 So.2d at 211.
Finally, in Lockrow v. Cline, 4 Kan.App. 716, 46 P. 720 (1896), in deciding whether a particular bond was a negotiable instrument, the court opined that the bond, which referred to a deed and included the phrase "to which said deed reference is hereby made, and which is made a part of this contract", was not negotiable. The court noted that by including each and every provision of the mortgage deed in the bond, as if it were contained in the same instrument, the danger was that the mortgage could contain provisions which might render the bond non-negotiable. See also, U.S. v. Farrington, 172 F.Supp. 797 (D.C.Mass. 1959).
In the instant case, the express language of the bond assigned to Bankers Trust calls for the incorporation in the mortgage of the covenants and conditions contained in the separate mortgage agreement. It is clear from the overwhelming weight of authority that these words of incorporation impair the bond's negotiability because all of the essential terms of the bond cannot be ascertained from the face of the document, and thus the promise is made conditional. N.Y.U.C.C. § 3-104(1)(b). The fact that the incorporated mortgage may not actually contain any provisions that would impede the unconditional promise to pay is of no significance. U.S. v. Farrington, 172 F.Supp. 797, 800 (D.C.Mass.1959).
Consequently, this court will adhere to its previous ruling that the mortgage bond executed by the debtor and her husband in favor of certain relatives, which was assigned and hypothecated to Bankers Trust, is not a negotiable instrument. Submit order on notice.